## IMPRO PRODUCTS, INC.

v.

**John R. BLOCK, Secretary of Agriculture of the United States.**

No. 82–2447.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 8, 1983.

Decided Dec. 16, 1983.

Michael J. Ryan, Asst. U.S. Atty., with whom Stanley S. Harris, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence, John H.E. Bayly, Jr., Asst. U.S. Attys. and Raymond W. Fullerton, Asst. Gen. Counsel, and Aaron B. Kahn, Atty., Dept. of Agriculture, Washington, D.C., were on brief, for appellant.

Harold M. Carter, with whom Philip C. Jones, Washington, D.C., was on brief, for appellee. George T. Qualley, Sioux City, Iowa, also entered an appearance for appellee.

Before WRIGHT, WALD and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This appeal is the by-product of a protracted dispute between Impro Products, Inc. ("Impro") and the Department of Agriculture ("USDA"). In 1981, Impro filed suit claiming that USDA had improperly distributed reprints of an article that contained allegedly false and misleading information about an Impro product. The disputed article, published in 1970 in the American Journal of Veterinary Research, discussed a USDA study of the efficacy of a veterinary product manufactured by Impro. After hearing, the District Court enjoined USDA from releasing copies of the article and also ordered the Department to attach explanatory information to any other disseminated report on the USDA test of Impro's product.

As a preliminary matter, there is reason to question whether there was any "final agency action" subject to judicial review under the Administrative Procedure Act ("APA"). However, even assuming that there was such agency action, we hold that review in the District Court was barred by the statute of limitations. Accordingly, we reverse the decision and order of the District Court and remand this case for further proceedings consistent with this opinion.

## I. BACKGROUND

Almost twenty years ago, in 1965, Impro applied to USDA under the Virus, Serum and Toxin Act of 1913, 21 U.S.C. §§ 151–158 (1976) ("VST Act"), for a license to produce, ship and sell a veterinary product later named "Whey Antibody Blend." The VST Act makes it unlawful to ship interstate any unlicensed virus, serum, toxin or "analogous product" intended for treatment of domestic animals. *Id.* § 158. Impro claimed the product improved the health and milk production of cows if properly administered.

Initially, the Veterinary Biologics Division of USDA issued a temporary license to Impro to market Whey Blend. The temporary license expired in September 1967 and, since that date, USDA has denied further Impro applications for a license to market Whey Blend. Impro has never sought judicial review of the denials of its license applications.

In 1966, scientists in the USDA Agriculture Research Service ("ARS") reviewed the Impro license application, decided its supporting data were inadequate, and undertook their own study of the efficacy of Whey Blend. ARS scientists met with Impro representatives and worked out a protocol by which to test the product. Testing began in October 1966 at the Beltsville, Maryland, ARS facility, and was completed in December 1967. ARS scientists conclud-

ed that the Beltsville test results did not support Impro's claim of efficacy.[1] Thereafter, ARS scientists wrote an article summarizing the ineffectiveness of Whey Blend, as reflected in the test results, which was submitted to and published in the August 1970 issue of the American Journal of Veterinary Research ("AJVR"). Smith, Kiddy, Plowman, Schultze & Hooven, *Whey Antibody Preparation: Effects of Prepartum Injection on Milk Production in Dairy Cows*, 31 AM.J. VETERINARY RESEARCH 1485 (1970), *reprinted in* J.A. 83–86. Since publication, and as recently as October 15, 1981, USDA regularly has released copies of the article, often coupled with a statement that Impro has no license to sell Whey Blend in the interstate market.[2] From 1969 to the present, Impro has doggedly attacked the Beltsville test results, and has submitted materials to USDA criticizing the test and its results. USDA repeatedly responded that it believed the test was sound, most recently on May 8, 1981. *See Impro Products, Inc. v. Block*, No. 81–1284, slip op. at 4–5 (D.D.C. July 9, 1982) (Memorandum and Order), *reprinted in* J.A. 52–53.

After receiving the May 8, 1981, correspondence, Impro filed this action. It alleged that the Beltsville test was not properly conducted and that the AJVR article contained false and misleading information about Impro's product. Impro requested District Court review of USDA actions taken pursuant to the VST Act—which authorizes USDA to license products—and of actions taken in violation of its Fifth Amendment right to due process. Specifically, Impro sought a declaratory judgment that

the test was unreliable and fallacious, and an injunction proscribing USDA's distribution of, and reliance on, the Beltsville test and the AJVR article. The Government counterclaimed, arguing first, that Impro had sold its product interstate without a license, and that such sales should be declared a public nuisance and enjoined; and second, that such sales violated the VST Act and should accordingly be enjoined. The Government also entered an array of defenses, among them that neither the Beltsville test nor the subsequent publication of its results were "agency action" subject to review, and that any suit for judicial review was barred by the statute of limitations. *See Impro Products, Inc. v. Block*, No. 81–1284, slip op. at 5–6 (D.D.C. July 9, 1982) (Memorandum and Order), *reprinted in* J.A. 53–54.

In a series of rulings, the District Court addressed each of these issues. In deciding the issues pertinent to our review, the court first held that the VST Act makes certain action illegal but provides for no civil injunctive relief. It therefore declined to imply such a remedy on behalf of the Government. *Impro Products, Inc. v. Block*, No. 81–1284 (D.D.C. Apr. 7, 1982) (Memorandum and Order), *reprinted in* J.A. 38–46. Second, the court ruled that Impro's complaint stated an actionable claim that was not time-barred. The court concluded that dissemination of the Beltsville test results was "agency action" subject to judicial review under 5 U.S.C. § 702,[3] and that final agency action occurred in 1981, *i.e.,* on the last of many occasions when USDA officials

---

1. The District Court, however, found that procedures and objectives of the Beltsville test deviated from the project outline. *Impro Products, Inc. v. Block*, No. 81–1284, slip op. at 4–5 (D.D.C. Sept. 2, 1982) (Memorandum and Order), *reprinted in* Joint Appendix ("J.A.") 71–72.

2. Under 7 U.S.C. § 430 (1982), the Secretary is authorized to test products and disseminate the results of the tests. The section provides:

   The Secretary of Agriculture may purchase in the open market from applicable appropriations samples of all tuberculin, serums, antitoxins, or analogous products, of foreign or domestic manufacture, which are sold in the

United States, for the detection, prevention, treatment, or cure of diseases of domestic animals, test the same, and disseminate the results of said tests in such manner as he may deem best.

3. In fact, the District Court judge ruled first that both the conduct of the test and dissemination of the results were agency action. Subsequently he reconsidered that ruling and determined that the conduct of the test was not subject to review. *Impro Products, Inc. v. Block*, No. 81–1284 (D.D.C. July 28, 1982) (Memorandum and Order), *reprinted in* J.A. 60–67.

848

refused to abandon or modify the Beltsville test results. *Impro Products, Inc. v. Block,* No. 81–1284 (D.D.C. July 9, 1982) (Memorandum and Order), *reprinted in* J.A. 49–59. Third, the court found that the appropriate standard of review of the challenged agency action was whether the actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Impro Products, Inc. v. Block,* No. 81–1284 (D.D.C. July 28, 1982) (Memorandum and Order), *reprinted in* J.A. 60–67. Fourth, the District Court concluded that the AJVR article contained false and misleading statements, that its release in its current form constituted arbitrary and capricious action and an abuse of discretion, and that dissemination in its current form should be enjoined. *Impro Products, Inc. v. Block,* No. 81–1284 (D.D.C. Sept. 2, 1982) (Memorandum and Order), *reprinted in* J.A. 68–82.

On appeal, the Government challenges each of the rulings against it.

## II. Discussion

### A. *The Existence of "Agency Action"*

We begin our inquiry with a consideration of whether the agency's behavior in this matter was properly subject to judicial review. The Administrative Procedure Act subjects to judicial review "final agency action" for which there is no other adequate remedy in a court. APA § 10(c), 5 U.S.C. § 704 (1982). For there to be "final" agency action, there must, of course, be "agency action." A threshold question therefore is whether "agency action" has occurred. The APA defines "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." APA § 2(g), 5 U.S.C. § 551(13) (1982). The District Court held that the agency's decision to release the test results, made pursuant to 7 U.S.C. § 430, *see* note 2, *supra,* satisfied the statutory "agency action" lan-

guage. Case law from this Circuit, however, suggests otherwise.

Thirty-five years ago, this court held, in *Hearst Radio, Inc. v. FCC,* 167 F.2d 225 (D.C.Cir.1948), that an agency decision to disseminate information it had gathered on its own did not amount to "agency action." In *Hearst Radio,* the FCC published a report entitled "Public Service Responsibility of Broadcast Licensees," known as the "Blue Book." One section of the report contained allegedly false and distorted misrepresentations directed at WBAL, one of plaintiff Hearst's broadcast stations. Plaintiff sought a declaratory judgment that it was entitled, as a matter of law, to withdrawal of the unwarranted charges and misrepresentations in the Blue Book. It argued that it had suffered a legal wrong as a result of the agency's action—the decision to publish—and therefore had a right to judicial review under the Administrative Procedure Act. The District Court dismissed the action and this court affirmed, holding that plaintiff had presented a claim of libel, but that no statutory agency action was implicated.

The court in *Hearst Radio* first noted that the APA "does not provide judicial review for everything done by an administrative agency," 167 F.2d at 227, and then recited the limits posed by the statutory definition of "agency action," a definition that remains substantially the same today.[4] The court concluded:

Broad as is the judicial review provided by the Administrative Procedure Act, it covers only those activities included within the statutory definition of "agency action." That definition obviously does not cover an act such as the publication of the Blue Book. It follows that the judgment of the District Court must be affirmed.

*Hearst Radio,* 167 F.2d at 227. *See also Kukatush Mining Corp. v. SEC,* 309 F.2d 647, 652 (D.C.Cir.1962) (Bazelon, J., dissenting) (SEC's publication of "Canadian Re-

4. The only difference is that the statutory words "whole or a part of an agency rule," *see* p. 848, *supra,* have replaced the words "whole

or part of *every* agency rule." (emphasis added).

stricted List," naming Canadian corporations whose securities SEC had reason to believe were being distributed in violation of U.S. securities laws, not "agency action" reviewable under APA) (citing *Hearst Radio*); *Pharmaceutical Manufacturers Association v. Kennedy,* 471 F.Supp. 1224 (D.Md. 1979) (proposed release by FDA of list of therapeutically equivalent drugs, comparing pharmaceuticals containing identical generic active ingredients, and of guide to prescription drug prices, both of which were alleged to be false and misleading, held not agency action). Having found no agency action, the court in *Hearst Radio* ceased its inquiry and never even considered the existence of "*final* agency action."

*Hearst Radio* is not readily distinguishable from the case before us, and it leaves us with serious doubts as to whether USDA's dissemination of the article amounts to reviewable agency action.[5] Both cases involve an agency decision to disseminate information it has gathered that is potentially harmful to the plaintiff. In both *Hearst Radio* and the case before us, moreover, the agency publication is alleged not only to be defamatory but also to be a knowing misrepresentation.

Despite its obvious relevance, we nonetheless have reason to question the continued validity of the *Hearst Radio* decision, particularly in a case such as this one in which there is a specific statutory authorization for dissemination of information.[6] The *Hearst Radio* doctrine has not been reconsidered carefully since 1948. During the thirty-five years since the issuance of the decision in *Hearst Radio,* the Supreme

Court and lower courts have developed a more expansive interpretation of the term "agency action" than the one suggested by *Hearst Radio.* See, e.g., *FTC v. Standard Oil Co. of California,* 449 U.S. 232, 238 n. 7, 101 S.Ct. 488, 492 n. 7, 66 L.Ed.2d 416 (1980) (holding that FTC issuance of a complaint meets the APA definition of "order" and therefore is "agency action," even if not "*final* agency action") (quoting broad language of APA legislative history defining "agency action"). Indeed, we find it troubling that literal adherence to the *Hearst Radio* rule in a case like this one would preclude judicial review under the APA of an agency's dissemination of information that is concededly false and, therefore, completely inconsistent with the statutory purpose of promoting a prosperous agriculture.[7] Moreover, because the Federal Tort Claims Act expressly preserves sovereign immunity from suits for money damages for libel and slander, 28 U.S.C. § 2680(h) (1976), the agency would also be insulated from civil tort liability.

With these considerations in mind, we believe that *Hearst Radio* may no longer be a viable precedent; we are therefore disinclined to find that no "agency action" has taken place. However, we need not reconsider *Hearst Radio* at this time because the statute of limitations requires reversal in this case. Accordingly, we will defer any reexamination of *Hearst Radio* to another day.

### B. The Statute of Limitations

■ Assuming, *arguendo,* that the agency decision to disseminate the Beltsville test

---

**5.** The District Court relied on *Sears, Roebuck & Co. v. GSA,* 384 F.Supp. 996, 1001 (D.D.C.), aff'd, 509 F.2d 527 (D.C.Cir.1974), for the proposition that agency release of information amounts to agency action. In so doing, the District Court overlooked a crucial distinction between *Sears, Roebuck* and the matter before it. *Sears, Roebuck* represents a line of cases involving an agency's decision to publish material given to it by the challenging party. These cases focus on an agency's decision whether to grant or deny Freedom of Information Act ("FOIA") requests that would disclose plaintiffs' private information if granted. Because the "final agency action" in these cases is the decision on the FOIA request, and not publica-

tion *per se,* they are clearly inapposite to the case before us. See *Pharmaceutical Mfrs. Ass'n v. Kennedy,* 471 F.Supp. 1224, 1229 (D.Md.1979).

**6.** 7 U.S.C. § 430 (1982). In *Hearst Radio,* the court did not mention whether publication and dissemination of the Blue Book were authorized by statute.

**7.** 7 U.S.C. § 427 (1982) sets forth the statute's policy "to promote the efficient production and utilization of products of the soil ... and to promote a sound and prosperous agriculture and rural life."

results constitutes agency action, Impro's case still runs afoul of the six-year statute of limitations applicable in this case.[8] Under the APA, Impro may challenge only "final agency action." APA § 10(c), 5 U.S.C. § 704 (1982). On review of the record, however, we find that each event that might be deemed final agency action occurred substantially more than six years before Impro filed its complaint.

First, two events that conceivably constitute final agency action occurred prior to 1975. The *decision to disseminate the test results* occurred prior to 1970, when the agency submitted the article to the AJVR for publication. This complaint was filed in 1981. It can hardly be argued that that "action" fits within the six-year limitations period. Nor does the agency's *decision to disseminate reprints of the article* fit within that period, since it is clear that reprints were distributed as early as 1971. *See Impro Products, Inc. v. Block,* No. 81–1284, slip op. at 6–7 (D.D.C. Sept. 2, 1982) (Memorandum and Order), *reprinted in* J.A. 73–74. Since both events took place more than six years ago, review of both is barred by the statute of limitations.[9]

Second, we have been directed toward no activity that occurred during the six years prior to filing that amounts to final agency action. Impro argues that final agency ac-

tion occurred in 1981, when a USDA administrator responded to the last of numerous inquiries by Impro about USDA's position on the Beltsville test and report, J.A. 88–89, and stated his belief that the agency's actions were sound. J.A. 111. Impro therefore contends that the statute of limitations began to run in 1981. We disagree. Impro pursued its own informal routes of inquiry for ten years and then decided to characterize its 1981 letter to USDA as a request for a *final* resolution. Thus, it argues, the agency's response to the 1981 letter constituted final agency action. This line of analysis is patently specious. For one thing, it is absurd to argue that the last date of inquiry is the relevant date for statute of limitations purposes. For another, it is surely a frivolous contention to suggest that USDA is somehow bound by Impro's self-serving characterization of the 1981 letter as a request for a final ruling.

Plainly, the cause of action accrues when the "right to resort to federal court [is] perfected." *Oppenheim v. Campbell,* 571 F.2d 660, 662 (D.C.Cir.1978). In the agency context, the logical inference is that the cause of action accrues when all statutorily required or permitted agency review has been exhausted.[10] In this case, where no formal review procedures existed, the cause of action accrued when the agen-

---

**8.** 28 U.S.C. § 2401(a) (Supp. V 1981) provides in pertinent part: "Except as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." As the language of § 2401(a) makes clear, the section applies to both equitable and legal claims. *See Saffron v. Department of Navy,* 561 F.2d 938, 946 (D.C.Cir.1977) (McGowan, J., concurring), *cert. denied,* 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978); *Werner v. United States,* 188 F.2d 266, 268 (9th Cir.1951); *cf. Screven v. United States,* 207 F.2d 740, 741 (5th Cir.1953); *Heritage Pullman Bank & Trust Co. v. United States,* 480 F.Supp. 54, 57 (N.D. Ill.1979). It also establishes the period available for judicial review of the validity of administrative decisions. *See Crown Coat Front Co. v. United States,* 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967). We therefore have no doubt that § 2401 limits to six years the time period available to Impro to seek judicial review of the alleged agency action in this case.

**9.** Nor does each reissuance of the reprint start the statute of limitations anew. The decision to release reprints was made more than ten years ago, and Impro points to no evidence suggesting that a conscious, independent decision was made with any subsequent reissuance.

**10.** Of course, the statute may be tolled if plaintiff did not know, and could not reasonably have known, that it had been injured. *See Japanese War Notes Claimants Ass'n v. United States,* 373 F.2d 356, 358–59, 178 Ct.Cl. 630, *cert. denied,* 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967). In this case, Impro alleged as early as November 7, 1969, in a letter to USDA scientists, that a report of the Beltsville test was libelous and defamatory. Defendant's Ex. 1, Attachment to Response to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss or, Alternatively, for Summary Judgment (June 23, 1982).

cy action occurred. Impro's last letter to agency officials in no way affected rights, or altered the status quo, so as to constitute a date of accrual. *See Provisioners Frozen Express, Inc. v. ICC,* 536 F.2d 1303, 1305 (9th Cir.1976) (request for further proceedings on an issue does not create a right to judicial review of original proceeding). Moreover, a contrary rule would provide parties with an easy means to circumvent the statute of limitations applicable to actions under the APA, simply by writing a letter requesting reconsideration. We therefore conclude that Impro's action under the APA was barred by the statute of limitations.[11]

We note, in addition, that Impro's complaint also asserts that USDA violated its Fifth Amendment right to due process.

The District Court did not entertain this assertion, apparently because it found that the APA provided ample means to give Impro the injunctive relief it sought. Because we cannot discern from the pleadings the precise nature of this constitutional claim, we remand to the District Court for further proceedings on that issue alone. In so doing, we emphasize that we take no position on the merits of Impro's claim.[12]

## C. *Implied Remedies on Behalf of the Government*

USDA counterclaims that Impro is marketing its product, Whey Blend, without a license, and that the Government should be permitted to enjoin Impro from selling Whey Blend on the basis of an implied civil remedy under the VST Act.[13] The Act

---

11. Impro appears to argue that it is not bound by the constraints of the APA because its action is grounded solely on 28 U.S.C. § 1331 (Supp. V 1981). As a result, it contends, it need not prove "agency action" is implicated. Brief of Appellee, p. 37. In making this argument, Impro overlooks the requirement of § 1331 that the action arise under the Constitution, laws, or treaties of the United States. Impro fails to point to any federal law, other than the APA, to be enforced, and it has offered no grounds on which we could imply such a right to sue from any statute. Impro therefore is bound by the constraints of the APA.

12. On remand, the District Court first must determine whether Impro's constitutional claim passes the threshold test set out in *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). To pass that test, Impro must demonstrate that its alleged claim under the Constitution is neither "wholly insubstantial" nor "frivolous." 327 U.S. at 682–83, 66 S.Ct. at 776. Second, if plaintiffs indeed assert a colorable constitutional claim, the District Court must determine whether it satisfies the six-year statute of limitations for civil actions against the United States. 28 U.S.C. § 2401(a) (Supp. V 1981). If it turns out that the constitutional claim is based on the same claim we have decided here—the decision to publish the article—simply with a new label attached, it, too, should fail.

Third, if Impro's claim falls within the statute of limitations, the District Court must then assess whether Impro in fact has suffered any damages. After a hearing, the District Court found that the AJVR article contains errors in its description of the test *methodology* but concluded nonetheless that the test *results* were misstated. This conclusion is difficult to fath-

om because the court pointed to no evidence that the article misconstrues the efficacy—or lack thereof—of Impro's product. Indeed, Impro's failure to present to USDA data suggesting otherwise, and its decision not to challenge the denial of its license application, counsel caution in determining whether Impro has been damaged by the errors in the article.

Finally, we note that the District Court's finding that the article is false and misleading is in no respect dispositive of the question whether its dissemination amounts to constitutional defamation, if that in fact is the basis of Impro's constitutional claim. Neither the elements of common law defamation, *see* RESTATEMENT (SECOND) OF TORTS §§ 558, 559 (1977), nor of constitutional defamation, *see Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), are met by a simple finding of falsehood.

13. USDA filed two counterclaims. The first sought an injunction on an implied remedy. The other claim alleged that Impro's interstate marketing of worthless products constituted a violation of the VST Act and a burden on interstate commerce, and sought to enjoin such sales as a federal common law public nuisance. The District Court pointed out that the nuisance claim was predicated solely on the alleged VST Act violations and that, since the VST Act did not authorize the Government to seek injunctions against violations, "the Government may not create that authority merely by styling its complaint as one in nuisance." *Impro Products, Inc. v. Block,* No. 81–1284, slip op. at 9 n. 1 (D.D.C. Apr. 7, 1982) (Memorandum and Order), *reprinted in* J.A. 46 n. 1. We agree. We note, also, that a contrary holding would enable *any agency* limited by

authorizes criminal sanctions alone. *See* 21 U.S.C. § 158 (1976). The Government concedes that the legislative history does not indicate that an implied remedy is in order. Brief for Appellant, p. 28. In so doing, it acknowledges *sub silentio,* as the District Court did explicitly, *see Impro Products, Inc. v. Block,* No. 81–1284, slip op. at 5–7 (D.D.C. Apr. 7, 1982) (Memorandum and Order), *reprinted in* J.A. 42–44, that it fails to meet the strict standard for implying causes of action from statutes silent on the question. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 571, 99 S.Ct. 2479, 2486, 61 L.Ed.2d 82 (1979). The essence of the Government's argument is that courts should be more willing to imply civil remedies on behalf of the Government than on behalf of private persons, and that this case merits such an implied remedy. For this proposition, USDA cites *Wyandotte Transportation Co. v. United States,* 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), in which the Supreme Court implied a civil remedy in favor of the Government because, the Government here asserts, existing criminal penalties failed to deter the misconduct prohibited by the statute at issue. By analogy, the Government argues here that criminal penalties under the VST Act are inadequate, and that a civil remedy should be implied as a result. The Government fails

to point to any evidence that it has unsuccessfully pursued the VST Act's criminal penalties against Impro, or in any way to demonstrate that the Act's criminal penalties are inadequate. Thus, assuming, without deciding, that the Government's construction of *Wyandotte* is proper, we believe that the Government has failed to offer anything more than conclusory statements about the VST Act's inadequate remedies and consequently has not even met the *Wyandotte* standard it advances. Finding that the Government has offered no convincing basis on which to imply a civil remedy, we affirm the decision of the District Court denying the Government an injunction under the VST Act.

CONCLUSION

For the reasons set out above, we reverse the decision of the District Court in part, affirm it in part, and remand this case for further proceedings.

*So ordered.*

---

statute to criminal enforcement procedures to claim that the violation of the statute is a public nuisance, and to seek a civil injunction. We decline to take such a step. Especially when Congress has provided a particular remedy, "a court must be chary of reading others into it." *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979); *see also National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974).