**SISSETON–WAHPETON SIOUX TRIBE OF the LAKE TRAVERSE INDIAN RESERVATION, NORTH DAKOTA AND SOUTH DAKOTA, Devils Lake Sioux Tribe of the Devils Lake Sioux Indian Reservation, North Dakota, and the Sisseton–Wahpeton Sioux Council of the Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation, Montana, Plaintiffs,**

**v.**

**UNITED STATES of America and Donald P. Hodel, Secretary of the Interior, and James A. Baker, Secretary of the Treasury, Defendants.**

No. CV–87–095–GF.

United States District Court,
D. Montana,
Great Falls Division.

May 3, 1988.

---

Bertram E. Hirsch, Floral Park, N.Y., Sandra K. Watts, Great Falls, Mont., for plaintiffs.

George F. Darragh, Jr., Asst. U.S. Atty., Great Falls, Mont., for defendants.

## MEMORANDUM OPINION

HATFIELD, District Judge.

The present action challenges the validity of an act of Congress implemented to distribute those sums of money appropriated by Congress to satisfy a final judgment entered by the Indian Claims Commission pursuant to the authority vested in that entity by the Indian Claims Commission Act, 60 Stat. 1049, 25 U.S.C. §§ 70, *et seq.* At issue is the Act of October 25, 1972 (25 U.S.C. §§ 1300d, *et seq.*), which provided for distribution of a congressionally appropriated fund of money to the Sisseton and Wahpeton Tribes of Sioux Indians in satisfaction of a compromise judgment entered by the Indian Claims Commission to redress a breach by the United States of the terms of the Treaty of Prairie du Chien of July 15, 1830, and the Treaty of Traverse des Sioux of July 23, 1851. The Devils Lake Sioux Tribe of North Dakota, the Sisseton and Wahpeton Sioux Tribe of South Dakota and the Sisseton and Wahpeton Council of the Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation, Montana (hereinafter collectively referred to as the "plaintiff Tribes"), challenge the validity of that portion of the Distribution Act which provides for distribution of part of the fund to the individual lineal descendants of the Sisseton and Wahpeton Mississippi Sioux Tribe who are not members of any of the plaintiff Tribes (hereinafter referred to as "lineal descendants").

The plaintiff Tribes contend a distribution to lineal descendants of any monies appropriated to the Sisseton and Wahpeton Tribes of Sioux Indians pursuant to the final judgment of the Indian Claims Commission entered on July 25, 1967, in the *Sisseton and Wahpeton Bands or Tribes, et al. v. United States of America,* 18 Indian Claims Commission 526–a (1967), would violate: (1) the rights guaranteed the plaintiff Tribes under the due process and just compensation clauses of the fifth amendment to the United States Constitution; (2) the Tribes' rights established by agreement with the United States that settled the Tribes' action before the Indian Claims Commission; (3) the Supplemental Appropriations Act of June 19, 1968, which appropriated funds to satisfy the judgment entered by the Indian Claims Commission; (4) the trust responsibility and duty of the United States to the plaintiff Tribes.

The plaintiff Tribes invoke jurisdiction under 28 U.S.C. §§ 1331, 1346(a)(2), 1361, 1362 and the fifth amendment to the United States Constitution.

On May 8, 1987, this court granted the Sioux Tribes' request for preliminary injunctive relief thereby enjoining the distribution of the fund to the lineal descendants in accordance with the directive of 25 U.S.C. § 1300d–3(b), which was scheduled to commence on May 7, 1987.

The action is presently before the court on motion of the United States requesting the court to dismiss the plaintiff Tribes' claims on the grounds those claims are (1) barred by the general statute of limitations applicable to civil actions against the United States as established in 28 U.S.C. § 2401(a) and (2) the Distribution Act challenged by the plaintiff Tribes represents a legitimate, constitutionally permissible, exercise of the plenary authority of Congress over Indian money and property. The individual defendants, *i.e.,* Donald P. Hodel, Secretary of the Department of Interior,

and James A. Baker, Secretary of the Department of Treasury, move the court to dismiss the complaint as against them upon the ground that it fails to state a claim against them upon which relief can be granted.

## I.

Section 2 of the Indian Claims Commission Act, as amended, 25 U.S.C. § 70a, authorized claims to be brought on behalf of any Indian tribe, band or other identifiable group of American Indians for "claims arising from the taking by the United States, ... of lands owned or occupied by the claimant without the payment for such lands of compensation agreed to by the claimant." Following the enactment of the Indian Claims Commission Act, the plaintiff Tribes, in two companion actions, brought claim against the United States seeking compensation for approximately two million acres of land ceded by the Sisseton and Wahpeton Sioux Tribes to the United States by the Treaty of Prairie du Chian of July 15, 1830 (7 Stat. 328) and approximately 25 million acres of land ceded by the Sisseton and Wahpeton Sioux Tribes to the United States by the Treaty of Traverse des Sioux of July 23, 1851 (10 Stat. 949). On May 17, 1967, the plaintiff Tribes and the United States entered into a stipulation for settlement and entry of final judgment in the two actions before the Indian Claims Commission.

Based upon the stipulation executed between the parties, the Indian Claims Commission entered a final judgment on July 25, 1967, in favor of the Sisseton and Wahpeton Tribes of Sioux Indians in the two companion actions, for the sum of approximately six million dollars. *See, Sisse-ton and Wahpeton Bands or Tribes, et al. v. United States of America,* 18 Indian Claims Commission 526-a (1967). The plaintiff Tribes and their respective members, under the supervision of the Bureau of Indian Affairs of the Department of Interior, voted to approve that settlement.

Pursuant to the Act of June 19, 1968 (82 Stat. 239), Congress appropriated money to satisfy the judgment entered by the Indian Claims Commission.[1] The monies appropriated were deposited in an interest-bearing trust account in the Treasury of the United States. Subsequently, by the Act of October 25, 1972 (25 U.S.C. §§ 1300d, *et seq.*), Congress implemented a plan for the distribution of the fund. The Distribution Act provided, *inter alia,* that a portion of the fund, specifically 25.0225% thereof, was to be set aside for distribution to Sisseton and Wahpeton Mississippi Sioux Tribe lineal descendants, *i.e.,* persons who are not eligible for membership in any of the plaintiff tribes, but who can trace their lineal ancestry to someone who once was a tribal member. 25 U.S.C. §§ 1300d–3(b), 1300d–4(a). The Distribution Act further directed the Secretary of the Interior to prepare a lineal descendancy roll and to distribute, on a per capita basis, the funds allocated to lineal descendants whose names were included on the roll. 25 U.S.C. §§ 1300d–3(b), 1300d–4(c).

The plaintiff Tribes challenge the validity of that portion of the Distribution Act which directs the distribution of a part of the judgment fund to the lineal descendants of the Sisseton and Wahpeton Mississippi Sioux Tribe. The essence of the Tribes' position lies in their assertion that where there exists an Indian tribe that

---

**1.** Damage claim judgments awarded by the Indian Claims Commission are not self-executing, the Congress must appropriate funds to satisfy the judgment as well as implement a plan of distribution of the funds. Congress has the right to control the disposition and distribution of claims awarded. This power derives from the power vested in Congress to determine the members of the tribe entitled to receive proportionate shares of tribal lands or funds. *See, United States v. Jim,* 409 U.S. 80, 82–83, 93 S.Ct. 261, 263, 34 L.Ed.2d 282 (1972); *Cherokee Nation v. Hitchcock,* 187 U.S. 294, 306–07, 23 S.Ct. 115, 119–120, 47 L.Ed. 183 (1902). This general power includes the right to establish procedures to determine tribal membership for the distribution of damage claim awards where an appropriation has been made in satisfaction of the judgment and if per capita distribution of the judgment is intended by Congress. *See, Delaware Tribal Business Commission v. Weeks,* 430 U.S. 73, 84–86, 97 S.Ct. 911, 918–920, 51 L.Ed.2d 173 (1977); *Wallace v. Adams,* 204 U.S. 415, 27 S.Ct. 363, 51 L.Ed. 547 (1907). Distribution schemes implemented by Congress are subject to judicial review.

represents the interests of the aboriginal tribe who owned the lands, the taking of which by the United States necessitated the entry of a judgment for monetary compensation by the Indian Claims Commission, only those tribes and their members are constitutionally or legally entitled to share in an award of the Indian Claims Commission providing compensation for the wrong done to the aboriginal tribe. The Tribes' submit any act of Congress implemented to effectuate the distribution of a fund created to satisfy a judgment of the Indian Claims Commission must comport with the strictures of the fifth amendment to the United States Constitution. In that regard, the Tribes submit the fifth amendment is violated if the Distribution Act cannot be tied rationally to the fulfillment of Congress' unique obligation toward the Indians. Specifically, the Tribes assert that a judgment fund distribution law violates the fifth amendment when it authorizes distribution of the fund to persons whose lineal ancestors had severed their relations with the Tribes or to persons who themselves are not members of, or closely affiliated with, the Tribes holding a beneficial interest in the judgment fund. With respect to the judgment fund at issue in this action, the Tribes contend that the "lineal descendants" certified by the defendants as entitled to share in the distribution of the judgment fund are (1) persons who do not have a Sisseton and Wahpeton Sioux lineal ancestor; (2) persons who have a Sisseton and Wahpeton Sioux lineal ancestor who severed relations with the Sisseton and Wahpeton Sioux Tribes; and (3) persons who are not members of, and have no close affiliation with, any of the plaintiff Tribes.

Having considered the arguments advanced by the parties in light of the record, the court is convinced the plaintiff Tribes' claims are time barred.

## II.

The United States contends the plaintiff Tribes' claims are barred by 28 U.S.C. § 2401(a), the general statute of limitations applicable to civil actions against the United States. Section 2401(a) provides, in pertinent part, that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." Regardless of whether the claims of the plaintiff Tribes are founded in contract, or in tort, their claims necessarily accrued, the United States submits, on October 25, 1972, the date the Distribution Act at issue was passed by Congress. In view of the fact the present complaint was not filed until April 27, 1987, the United States asserts the plaintiff Tribes are precluded by the period of limitations set forth in 28 U.S.C. § 2401(a) from prosecuting their claims.

The plaintiff Tribes take the position that 28 U.S.C. § 2401(a) is simply inapplicable to the claims they assert. In the alternative, the plaintiff Tribes submit that if § 2401(a) is deemed to be the applicable statute of limitations, the statute has been effectively tolled under the circumstances of this case. The court disagrees.

When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction. *United States v. Mottaz,* 476 U.S. 834, 841, 106 S.Ct. 2224, 2229, 90 L.Ed.2d 841 (1986) (*citing, United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)). In particular, when the legislation at issue contains the statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity. *Id.* (*citing, Block v. North Dakota,* 461 U.S. 273, 287, 103 S.Ct. 1811, 1819–1820, 75 L.Ed.2d 840 (1983)). Consequently, a period of limitations placed upon the sovereign's waiver of immunity from suit is not a mere statute of limitation, but a condition precedent to the right to sue. *Bartlesville Zinc Co. v. Mellon,* 56 F.2d 154, 155 (7th Cir.1932), *cert. denied,* 287 U.S. 602, 53 S.Ct. 8, 77 L.Ed. 524 (1932). The failure to comply with the period of limitations prescribed by 28 U.S.C. § 2401 does not merely provide the United States with a waivable defense to an action, but it serves to deprive the federal courts of jurisdiction to entertain the action. *See, United States v. One 1961*

*Red Chevrolet Impala Sedan,* 457 F.2d 1353, 1357 (5th Cir.1972).

■ By its express terms, 28 U.S.C. § 2401(a) applies to every "civil action" commenced against the United States. The term "civil action" is viewed as a term of art, judicially and statutorily defined as an action commenced by filing complaint with a court of competent jurisdiction. *See,* Fed.R.Civ.P. 3; *Crown Coat Front Company v. United States,* 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967); *Oppenheim v. Campbell,* 571 F.2d 660 (D.C.Cir. 1978). Use of the phrase "every civil action" has been construed to indicate an intent on the part of Congress that section 2401(a) applies to both legal and equitable actions. *Geyen v. Marsh,* 775 F.2d 1303, 1307 (5th Cir.1985). In view of the express language utilized by Congress in its enactment of section 2401(a), the court is not persuaded by the plaintiff Tribes' general assertion of that statute's impertinence to the claims advanced against the United States by the present complaint.

The plaintiff Tribes seek to impress upon the court that application of the period of limitations established by section 2401(a) to their claims would contravene the policies and purposes of that statute, as well as the Indian Claims Commission Act. Placing particular emphasis upon the fact that the issues presented by this controversy are primarily legal in nature, the plaintiff Tribes seek to convince the court that the design of statutes of limitations in seeking to preclude the prosecution of stale claims, is not fostered by application of the limitations period of section 2401(a) to the circumstances of this case. Moreover, the plaintiff Tribes implore the court to recognize that strict application of the period of limitations provided by section 2401(a) should yield to the contravailing and compelling federal policy embodied in the Indian Claims Commission Act to guarantee that Indian tribes finally receive payment of claims reduced to judgment by the Indian Claims Commission. The exacting fidu-

ciary standard under which the actions of the United States toward Indian tribes must be scrutinized, the plaintiff Tribes submit, dictate that the United States be precluded from relying upon the limitations period of section 2401(a) to defeat the plaintiff Tribes' claims.

The court begins its analysis of the proposition advanced by the plaintiff Tribes cognizant of the caution expressed by the court of appeals for this circuit in *Mann v. United States,* 399 F.2d 672 (9th Cir.1968):

Although exceptions to the applicability of the limitations period might occasionally be desirable, we are not free to enlarge that consent to be sued which the government, through Congress, has undertaken so carefully to limit. *See, United States v. Sherwood,* 312 U.S. 584, 586, [61 S.Ct. 767, 769, 85 L.Ed. 1058] (1941). The limitations period established by Congress 'must be strictly observed and exceptions thereto are not to be implied.' *Soriano v. United States,* 352 U.S. 270, 276 [77 S.Ct. 269, 273, 1 L.Ed.2d 306] (1957).

*Id.* at 673. In *Mann,* the court rejected the plaintiff's reliance upon his status as an Indian, and hence the government's concomitant duty to the plaintiff as a ward of the government, to defeat application of the statute of limitations applicable to actions under the Federal Tort Claims Act, *i.e.,* 28 U.S.C. § 2401(b). *Id.* at 673. The court reiterated that a general statute in terms applying to all persons include Indians and their property interests. *Id.* at 673 (*citing, FPC v. Tuscarora Indian Nation,* 362 U.S. 99, 116, 80 S.Ct. 543, 553, 4 L.Ed. 2d 584 (1960)).

The court finds nothing inherent in the fiduciary relationship extant between the United States and the various Indian tribes, or individual Indian persons, which precludes the United States from asserting the period of limitations provided in section 2401(a) as a bar to the prosecution of claims against that entity by an Indian tribe or an individual Indian person.[2]

**2.** The court notes the period of limitations provided by 28 U.S.C. § 2401(a) has been applied in a variety of contexts involving suits by individu-

al Indian persons or tribe against the United States. *See, e.g., Big Spring v. United States, Bureau of Indian Affairs,* 767 F.2d 614 (9th

In determining whether the United States may legitimately rely upon the limitations period established by section 2401(a) to preclude the plaintiff Tribes' prosecution of the claims *sub judice*, the court is guided by the observations of the United States Supreme Court in the case of *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), regarding application of the period of limitations set forth in 28 U.S.C. § 2401(b) and applicable to claims founded upon the Federal Tort Claims Act. Having reiterated the point that statutes of limitation are designed to protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, the court in *Kubrick* stated:

> Section 2401(b), the limitations provision involved here, is the balance struck by Congress in the context of tort claims against the government; and we are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims. *Campbell v. Haverhill*, 155 U.S. 610, 617 [15 S.Ct. 217, 220, 39 L.Ed. 280] (1895); *Bell v. Morrison*, [26 U.S.] 1 Pet. 351, 360 [7 L.Ed. 174] (1828). We should regard the plea of limitations as a 'meritorious defense, in itself serving the public interest.' *Guarantee Trust Company v. United States*, 304 U.S. 126, 136 [58 S.Ct. 785, 790, 82 L.Ed. 1224] (1938). We should also have in mind that the Act waives the immunity of the United States and that in construing the statute of limitations, which is a condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended. *See, Soriano v. United States*, 352 U.S. 270, 276 [77 S.Ct. 269, 273, 1 L.Ed.2d 306] (1957); *cf., Indian Towing Company v. United States*, 350 U.S. 61, 68–69 [76 S.Ct. 122, 126, 100 L.Ed. 648] (1955). Neither, however, should we assume the authority to narrow the waiver that Congress intended. *Indian Towing Company v. United States, supra.*

The gravamen of the plaintiff Tribes' amended complaint is that the Distribution Act of October 25, 1972, serves to improperly deprive those tribal entities of their property in violation of both their constitutional rights, as well as the terms of the "contract" extant between the plaintiff Tribes and the United States, as embodied in the settlement agreement entered by those parties before the Indian Claims Commission. In that regard, the court recognizes that an Act of Congress appropriating funds, in satisfaction of a judgment of the Indian Claims Commission, creates a fund held in trust for the "tribes, band or groups" in whose favor the judgment of the Indian Claims Commission was entered. *Angle v. United States*, 709 F.2d 570, 575 (9th Cir.1983). Accordingly, pursuant to the 1968 Appropriations Act, the judgment fund at issue in the case at bar was held in trust for the plaintiff Tribes. Therefore, the plaintiff Tribes had a substantive right in that fund, and the sovereign immunity of the United States was waived with respect to damage claims predicated on a breach of the trust relationship. *Angle v. United States*, 709 F.2d at 574 (*citing, Rogers v. United States*, 697 F.2d 886, 890 (9th Cir. 1983), and *Moose v. United States*, 674 F.2d 1277, 1281 (9th Cir.1982)).

■ It was the 1972 Distribution Act, which first provided, in section 202(a) and (c), 25 U.S.C. §§ 1300d–4(a) and (c), for a per capita distribution to individual Indians. Accordingly, on October 25, 1972, the date the Distribution Act was enacted, a designated portion of the judgment fund became, for the first time, a fund held for the benefit of, and payable to, the individual lineal descendants. *See, Angle v. United States*, 709 F.2d at 574 (9th Cir.1983). Recognition of the fact the plaintiff Tribes, as

Cir.1985) (section 2401(a) applied to claims under provisions of the General Allotment Act (25 U.S.C. §§ 331–358)); *Loring v. United States*, 610 F.2d 649 (9th Cir.1979) (section 2401(a) applied to claim by members of Indian community that the United States allegedly took right-of-way over their lands without compensation); *Nichols v. Rysavy*, 809 F.2d 1317 (8th Cir.1987) (section 2401(a) applied to bar claim under 25 U.S.C. § 345; *see also, Christensen v. United States*, 755 F.2d 705 (9th Cir.1985).

entities, became trust beneficiaries pursuant to the 1968 Appropriations Act, and that the individual lineal descendants of "all other Sisseton and Wahpeton Sioux" became trust beneficiaries of a portion of the judgment fund pursuant to the 1972 Distribution Act, places the issue of when any claim accrued to the plaintiff Tribes in proper perspective.

As a general rule, a cause of action accrues when the right to resort to federal court is perfected. *Impro Products Inc. v. Block*, 722 F.2d 845, 850 (D.C.Cir.1983) (*citing, Oppenhiem v. Campbell*, 571 F.2d 660 (D.C.Cir.1978)). Restated, an action accrues upon discovery of the alleged injury. *Nichols v. Hughes*, 721 F.2d 657 (9th Cir. 1983). Under the circumstances of the present case, any claim emanating from the decision of Congress to distribute a portion of the judgment fund appropriated by the 1968 Appropriations Act to individual lineal descendants accrued on October 25, 1972, the date the Distribution Act was enacted by Congress. The court finds it irrelevant whether the claim asserted is phrased in terms of a breach of contract, a breach of trust responsibility, or a deprivation of constitutional right. Assuming the validity of each of the theories of liability advanced by the plaintiff Tribes, any cause of action having its genesis in the 1972 Distribution Act must be viewed as having accrued on the date Congress made its pronouncement. At that point in time the plaintiffs' right to resort to federal court was perfected.

The court is unpersuaded by the plaintiff Tribes' argument to the effect a cause of action did not accrue until the "roll" of lineal descendants was approved and certified by the Secretary of the Interior in 1987. It was not until that point in time, the plaintiff Tribes submit, that it became known whether any person would be determined eligible for inclusion on such a roll. Moreover, the plaintiff Tribes assert, a cause of action did not accrue regarding distribution of the judgment fund until the United States acted to disperse those funds to persons other than members of the plaintiff Tribes.

Upon entry of judgment by the Indian Claims Commission, the United States was placed in a dual role with respect to the plaintiff Tribes: the Government was at once a judgment debtor, owing the amount set forth in the judgment to the Tribes, and a trustee for the plaintiff Tribes responsible for insuring that the money was put to productive use and ultimately distributed in a manner consistent with the best interests of the plaintiff Tribes. *See, United States v. Dann*, 470 U.S. 39, 49, 105 S.Ct. 1058, 1064, 84 L.Ed.2d 28 (1985) (construing the "payment" requirement of section 22(a) of the Indian Claims Commission Act, 25 U.S.C. § 70u(a)). Upon payment of the judgment fund into the trust account, the United States, as fiduciary, was obligated to make the fund productive, and was fully accountable for any conversion or mismanagement of those funds. *Id.* at 50, n. 13, 105 S.Ct. at 1064 n. 13. If, as the plaintiff Tribes contend, the distribution of a portion of the judgment fund to the lineal descendants is a violation of the trust responsibility of the United States, the enactment of the 1972 Distribution Act must be viewed as constituting a distinct denial or repudiation of the trust relationship between the United States and the plaintiff Tribes.

Where the United States holds property in trust for another, the statute of limitations does not run against a beneficiary until the trust is terminated or repudiated, at least in cases involving liquidated claims. *Capoeman v. United States*, 440 F.2d 1002 (Ct.Cl.1971) (applying the general statute of limitations applicable to claims of which the United States Claims Court has jurisdiction, 28 U.S.C. § 2501). Accordingly, the period of limitations applicable to the claims asserted by the plaintiff Tribes in the matter *sub judice, i.e.,* 28 U.S.C. § 2401(a), began to run against those entities, as the beneficiaries of the judgment fund, on October 25, 1972. Because the plaintiff Tribes did not institute the present action until April 27, 1987, their claims are clearly barred, having accrued more than six years prior to bringing the present

suit.[3]

In view of the court's conclusion that the claims of the plaintiff Tribes' are barred by the statute of limitations established in 28 U.S.C. § 2401(a), the court finds it unnecessary to pass on the merits of the plaintiff Tribes' claims. Therefore, based upon the reason and authority set forth herein,

IT IS HEREBY ORDERED that the motion to dismiss of the defendant United States of America be, and the same hereby is, GRANTED.

The Clerk is directed to enter JUDGMENT accordingly.

---

**3.** As noted, the plaintiff Tribes name two federal officials as defendants. The complaint, as amended, however, fails to state any independent claim against these individual defendants. Rather, the complaint obviously pleads an *ultra vires* theory of liability against these individual defendants. In view of the Act of October 21, 1976, Pub.L. No. 94–574, § 1, 90 Stat. 2721 (5 U.S.C. § 702), which waives sovereign immunity for suits seeking non-monetary relief through non-statutory review of agency action, the *ultra vires* theory may not be relied upon to defeat application of the period of limitations established by section 2401(a). *See, Geyen v. Marsh, supra,* 775 F.2d at 1307. The plaintiff Tribes' action challenging the Distribution Act is an action against the United States subject to the period of limitations established by section 2401(a).