Marvin K. YOUPEE, Sr.; Cary G. Youpee; Darlan D. Youpee; Allen F. Youpee; Helen Youpee–Ricker; Williamette Y. Bussard, Plaintiffs–Appellees,

v.

Bruce BABBITT, Secretary, Department of Interior, and his Agents, Assigns, and Successors in office, Defendant–Appellant.

No. 94–35415.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 1995.

Decided Sept. 5, 1995.

---

Lois J. Schiffer and Andrew C. Mergen, United States Department of Justice, Washington, DC, for the defendant-appellant.

Rene A. Martell, Montana Legal Services, Wolf Point, Montana, for the plaintiffs-appellees.

Before: WRIGHT, BEEZER and HAWKINS, Circuit Judges.

## OPINION

BEEZER, Circuit Judge:

Congress has tried for many years to solve the problem of fractionation of Indian lands. The Supreme Court held Congress' first effort, Section 207 of the Indian Land Consoli-

dation Act, an unconstitutional taking without just compensation. Congress' second effort, amended Section 207, is before us now.

The district court held that amended Section 207 of the Indian Land Consolidation Act ("ILCA"), 25 U.S.C. § 2206, violates the Takings Clause of the Fifth Amendment. The district court also enjoined the defendants from acting under Section 207 to escheat certain lands to Indian tribes. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I

In the late Nineteenth Century, Congress initiated an Indian land policy under which lands would be allotted to individual members of Indian tribes. General Allotment Act of 1887, ch. 119, 24 Stat. 388.[1] The land was held in trust by the Government for a specified period of time and then descended according to the law of the state in which the land was located. After 1910, allottees were permitted to devise the allotted land by last will and testament in accordance with regulations promulgated by the Secretary of the Interior.

This land allotment policy led to disastrous results for the Indians. As successive generations came to hold the land, large parcels of land became fractionated into multiple undivided interests, with some parcels having dozens of owners. Representative Howard, in discussing the Indian Land Reorganization Act of 1934, explained the problem:

On allotted reservations, numerous cases exist where the shares of each individual heir from lease money may be 1 cent a month. Or one heir may own minute fractional shares in 30 or 40 different allotments. The cost of leasing, bookkeeping, and distributing the proceeds in many cases far exceeds the total income.

78 Cong.Rec. 11,728 (1934) *quoted in Hodel v. Irving,* 481 U.S. 704, 708, 107 S.Ct. 2076, 2079, 95 L.Ed.2d 668 (1987).

Recognizing the problem, Congress discontinued further Indian land allotment. Indian

Reorganization Act of 1934, 25 U.S.C. § 461. The land allotments continued to splinter, however, as each landowner generally had more than one heir. Congress then enacted ILCA in 1983. The escheat provision, Section 207, provided:

No undivided fractional interest in any tract of trust or restricted land within a tribe's reservation or otherwise subjected to a tribe's jurisdiction shall decedent [sic] by intestacy or devise but shall escheat to that tribe if such interest represents 2 per centum or less of the total acreage in such tract and has earned to its owner less than $100 in the preceding year before it is due to escheat.

*Hodel,* 481 U.S. at 709, 107 S.Ct. at 2079. Congress did not provide for compensation to the landowner of the land subject to escheat. *Id.*

The escheat provision was challenged by the heirs or devisees of members of the Oglala Sioux Tribe. At the time of their deaths, the decedents owned fractional interests in land subject to the escheat provisions. *Id.* The Eighth Circuit held that the statute violated the Takings Clause because it did not provide compensation to the decedents' estates. *Irving v. Clark,* 758 F.2d 1260 (8th Cir.1985). *Irving* held that the General Allotment Act granted each decedent a vested right of transferring an interest in land at death, thus invoking Fifth Amendment protection. *Id.* at 1268–69.

The Supreme Court affirmed. *Hodel v. Irving,* 481 U.S. 704, 107 S.Ct. 2076, 95 L.Ed.2d 668 (1987). The Court first noted that the plaintiffs had standing to challenge the escheat provision. The plaintiffs suffered injury-in-fact, satisfying Article III of the Constitution, because they were deprived of fractional interests they otherwise would have inherited. *Id.* at 711, 107 S.Ct. at 2080. The plaintiffs also satisfied the prudential standing doctrine because they could appropriately assert the claims of the decedents. *Id.* The Court then held that Section 207 of ILCA constituted an unconstitutional taking. While recognizing Congress' broad powers to

---

1. Lands in the Fort Peck Reservation were allotted to individual Indians under The Fort Peck Allotment Act of 1908, ch. 237, 35 Stat. 558, and the General Allotment Act of 1887, ch. 119, 24 Stat. 388.

regulate Indian land, the Court held that the escheat provision at issue "went too far" and that it was an extraordinary regulation of privately owned land. *Id.* at 716, 718, 107 S.Ct. at 2083, 2084.

First, the Court noted that while the income generated by the individual parcels may be de minimis, the value of the land itself may not be. *Id.* at 714, 107 S.Ct. at 2082. Second, the statute was unconstitutional because it completely abrogated a decedent's right to transfer land, thereby destroying "one of the most essential sticks in the bundle of rights that are commonly characterized as property—the right to exclude others." *Id.* at 716, 107 S.Ct. at 2083 (quoting *Kaiser Aetna v. United States,* 444 U.S. 164, 176, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979)). Although the decedents could enjoy the use of the land during their lifetime and could transfer the land *inter vivos,* "the right to pass on valuable property to one's heirs is itself a valuable right." *Id.* at 715, 107 S.Ct. at 2082. The Court observed that the statute abolished the right to devise even when consolidation of the land could occur.

Finally, the Court recognized the serious problem of extreme fractionation of Indian lands. The Court encouraged Congress to ameliorate this problem and suggested that some regulation of descent and devise of Indian lands may be appropriate. *Id.* at 718, 107 S.Ct. at 2084.

While *Hodel* was pending before the Eighth Circuit, Congress amended the escheat provision of ILCA. However, the Supreme Court declined to address the amended version because none of the land at issue escheated pursuant to the amended statute. The amended version is the subject of this appeal.

The escheat provision was amended in three significant respects. First, the class of land subject to escheat was narrowed. The definition of "fractional interest" changed to a 2 per centum or less interest in a parcel which did not earn $100 in any of the *five* years prior to the date of the decedent's death. 25 U.S.C. § 2206(a). Second, the statute permits landowners to devise their interest to any other owner of an undivided fractional interest. 25 U.S.C. § 2206(b). Finally, the statute permits a tribe to adopt its own laws governing the disposition of escheatable interests, subject to the approval of the Secretary of the Interior. Under amended Section 207, the Secretary may not approve any tribal law which "fails to accomplish the purpose of preventing further descent or fractionation of such escheatable interests." 25 U.S.C. § 2206(c).[2]

## II

William Youpee ("Mr. Youpee") was an enrolled member of the Sioux and Assiniboine Tribes of the Fort Peck Reservation. He died testate on October 19, 1990. During

---

**2.** The text of amended 25 U.S.C. § 2206 provides:

(a) Descent or distribution
 No undivided interest held by a member or nonmember Indian in any tract of trust land or restricted land within a tribe's reservation or outside of a reservation and subject to such tribe's jurisdiction shall descend by intestacy or devise but shall escheat to the reservation's recognized tribal government, or if outside of a reservation, to the recognized tribal government possessing jurisdiction over the land if such interest represents 2 per centum or less of the total acreage in such tract and is incapable of earning $100 in any one of the five years from the date of decedent's death. Where the fractional interest has earned to its owner less than $100 in any one of the five years before the decedent's death, there shall be a rebuttable presumption that such interest is incapable of earning $100 in any one of the five years following the death of the decedent.

(b) Escheatable fractional interest
 Nothing in this section shall prohibit the devise of such an escheatable fractional interest to any other owner of an undivided fractional interest in such parcel or tract of trust or restricted land.
(c) Adoption of Indian tribal code
 Notwithstanding the provisions of subsection (a) of this section, any Indian tribe may, subject to the approval of the Secretary, adopt its own code of laws to govern the disposition of interests that are escheatable under this section, and such codes or laws shall take precedence over the escheat provisions of subsection (a) of this section, provided, the Secretary shall not approve any code or law that fails to accomplish the purpose of preventing further descent or fractionation of such escheatable interests.

his lifetime, he possessed several undivided interests in allotted trust land on various Indian reservations.[3] The plaintiffs, Marvin K. Youpee, Sr., Cary G. Youpee, Allen F. Youpee, Helen Youpee Ricker, Williamette Y. Bussard and Darlan D. Youpee ("the plaintiffs") are enrolled members of the Fort Peck Tribes and are the children and potential heirs of William Youpee.

Mr. Youpee's estate was assigned to a Department of the Interior Administrative Law Judge ("ALJ") to determine the heirs of Mr. Youpee and claims against his estate. At a hearing, the ALJ stated that various certified interests would escheat to various tribes under the amended ILCA, based on Bureau of Indian Affairs certifications that Mr. Youpee's interest in the allotments at issue was 2% or less and the designated devisees were not owners of existing shares of any of the allotments. The plaintiffs did not present any evidence to rebut the presumption of escheat. In April 1992, the ALJ issued an order validating Mr. Youpee's 1981 will and decreed the partial distribution of Mr. Youpee's estate.

The plaintiffs appealed the decree of the partial distribution to the Department of the Interior Board of Indian Appeals arguing that the escheat provisions of ILCA were unconstitutional. The Board of Indian Appeals dismissed this appeal stating that it did not have jurisdiction to determine constitutional issues.

The plaintiffs then filed this action in the district court against Defendant Bruce Babbitt, his agents and assigns ("the Government"). The district court granted summary judgment in favor of the plaintiffs holding that they had standing to assert Mr. Youpee's claim and declaring that amended Section 207 of ILCA violated the Takings Clause of the Fifth Amendment. The Government timely appealed. On appeal, the Government concedes that the plaintiffs have standing to assert the claim of their father but contests the declaratory and injunctive relief ordered by the district court.

### III

 We review de novo the grant of summary judgment. *Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). A challenge to the constitutionality of a federal statute is also reviewed de novo. *Apache Survival Coalition v. United States,* 21 F.3d 895, 901 (9th Cir.1994).

### IV

The Government argues that amended Section 207 cures the unconstitutional flaws of the original version. It contends that the original version was declared unconstitutional because of the statute's extraordinary character of completely abolishing both descent and devise. The amended version does not possess this extraordinary remedy, because it permits the devise of land, restricting only the class of persons who may inherit the land. Unlike the complete abrogation in *Hodel,* the amended statute only partially abrogates Indian landowner rights and, as such, does not violate the Takings Clause.

In contrast, the plaintiffs argue that the amended statute is unconstitutional because the right of *descent* is still completely abolished. Further, for a class of Indian landowners, the right to *devise* is also completely abrogated. They state that the bulk of the allotments in question have descended through the generations. Although a decedent may devise escheatable land to heirs that possess a share of the allotment, in very few circumstances will lineal heirs possess an interest in trust land that their parent has inherited by lineal descent. In practice, then, a decedent will have to choose to devise the land to a collateral heir or a stranger, or allow it to escheat to the tribe. In most cases, a landowner will be indifferent between these alternatives and will allow the land to escheat upon death. Thus, the amended version produces the same evil as the original; certain Indian landowners are prohibited from conveying their land by both descent and devise.

---

**3.** The Government does not contest Mr. Youpee's possession of a vested property right in the undivided interests which is protected by the Fifth Amendment. *See Irving v. Clark,* 758 F.2d 1260,

1262 (8th Cir.1985) ("[V]ested property rights of individual Indians are 'secured and enforced to the same extent and in the same way' as the equivalent rights of other citizens.").

In *Hodel,* the Supreme Court applied the three part takings test enunciated in *Penn Central Transp. Co. v. City of New York,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2658, 57 L.Ed.2d 631 (1978). In considering whether a statute constitutes a taking, the Court has examined the taking question by "engaging in essentially ad hoc, factual inquiries" that have identified several factors. *Penn Central,* 438 U.S. at 124, 98 S.Ct. at 2659. These factors include (1) the economic impact of the statute; (2) its interference with reasonable investment backed expectations; and (3) the character of the governmental action. *Id.* We next discuss this test as applied in *Hodel* and as it applies to the amended statute.

First, the Court noted in *Hodel* that the economic impact of ILCA could be substantial. While the income *generated* from the parcel may be de minimis, the value of the land itself may not be. *Hodel,* 481 U.S. at 714, 107 S.Ct. at 2082. The Government argues that the amended statute cures this defect because, instead of looking back only one year to determine whether the land has produced $100 in income, the amended statute looks back five years. This argument misses the point. The Court focused on the value of the land itself, i.e., its fair market value if sold. While the income generated from a parcel of land may be a contributing factor in computing its fair market value, it is not the only factor. The parcels of land involved in *Hodel* were valued at $2,700 and $1,816, which the Court found were "not trivial sums." 481 U.S. at 714, 107 S.Ct. at 2082. In this case, Mr. Youpee's fractional interests are valued at $1,239, not significantly less than the land involved in *Hodel.* Thus, despite Congress' attempt to minimize the statute's economic impact, the amended statute has not cured this defect.

In *Hodel,* the Court held that the second factor, the decedents' investment backed expectations, was not implicated by ILCA. The Court determined that the allotments are generally held for lease rather than improved and used by the owners and generate little income for the individual owners. 481 U.S. at 715, 107 S.Ct. at 2082. We agree with the Government that this analysis

applies equally to the amended statute and this factor weighs in favor of the statute's constitutionality.

The third and most important factor, however, is the nature of the Government's regulation of the decedent's land. The key distinction between the original and the amended versions of the statute is the permissibility of devise to any other owner of an undivided interest in the parcel of land. The Supreme Court stated, in dicta, that some restriction on the right to devise fractional land interests may be permissible:

> There is little doubt that the extreme fractionation of Indian lands is a serious public problem. It may well be appropriate for the United States to ameliorate fractionation by means of regulating the descent and devise of Indian lands. Surely it is permissible for the United States to prevent the owners of such interests from further subdividing them among future heirs on pain of escheat.... It may be appropriate to minimize further compounding of the problem by abolishing the descent of such interests by rules of intestacy, thereby forcing the owners to formally designate an heir to prevent escheat to the Tribe. What is certainly not appropriate is to take the extraordinary step of abolishing both descent and devise of these property interests even when the passing of the property to the heir might result in consolidation of property.

*Hodel,* 481 U.S. at 718, 107 S.Ct. at 2084 (internal citations omitted).

This paragraph supports the Government's position that the United States can restrict the descent of fractional interests. This statement also suggests that a law requiring a decedent to choose one heir to inherit each fractional interest may be constitutional.

However, the amended escheat provision goes further than the Supreme Court's dicta. The amended statute approaches the problem from the opposite end of the Court's proposed solution. Instead of allowing the decedent to choose one devisee from the population, the amended statute restricts the population to a very limited group, which is unlikely to contain any lineal descendants, and requires the decedent to choose a devi-

see from this group. The amended ILCA continues to completely abrogate both the descent and devise of land to an heir by owners such as Mr. Youpee who do not have an heir who possesses an undivided interest. Thus, under ILCA, many decedents will be unable to transfer land to their heirs, which *Hodel* recognizes is "itself a valuable right." 481 U.S. at 715, 107 S.Ct. at 2082.

The amended ILCA restricts descent and devise of land by Indian landowners who do not have an heir who owns a share in the parcel. The amended statute continues to completely abolish one of the sticks in the bundle of rights for a class of Indian landowners.

While we hold that the amended statute is unconstitutional, Congress may pursue other options to achieve consolidation of the innumerable fractional interests. For instance, the Government may purchase the land, it may condemn the land for a public purpose and pay just compensation, or, as *Hodel* states, it may regulate in some limited fashion the devise and descent of fractional interests to prevent further fractionation. However, as with the statute before the Supreme Court in *Hodel,* we hold that amended Section 207 is an extraordinary and impermissible regulation of Indian lands and effects an unconstitutional taking without just compensation.

AFFIRMED.