**Marvin K. YOUPEE, Sr., Cary G. Youpee, Darlan D. Youpee, Allen F. Youpee, Helen Youpee–Ricker, and Williamette Y. Bussard, Plaintiffs,**

v.

**Bruce BABBITT, Secretary, Department of Interior, and his Agents, Assigns, and Successors in Office, Defendant.**

No. CV–93–21–BLG–JDS.

United States District Court,
D. Montana,
Billings Division.

March 3, 1994.

## MEMORANDUM AND ORDER

SHANSTROM, District Judge.

Plaintiffs, enrolled members of the Fort Peck Tribes, have filed this action seeking declaratory and injunctive relief. Specifically, plaintiffs seek a declaration that section 207 of the **Indian Land Consolidation Act,** 25 U.S.C. §§ 2201–2210 (hereafter ILCA), violates the Fifth Amendment in authorizing a taking of real property without just compensation. Plaintiffs also seek injunctive relief preventing defendant Babbitt and his agents from acting under section 2206 to escheat certain land to Indian tribes. The parties have filed cross-motions for summary judgment.

## I.

### FACTUAL AND LEGAL BACKGROUND

#### A. *Statutory and Case Law History*

In 1983, Congress enacted the ILCA to ameliorate the mounting effects of the **Indian General Allotment Act of 1887.** This allotment legislation provided that each Indian would receive certain acreage. Fort Peck and other reservations were allotted under the provisions of the Act. Chapter 119, 24 Stat. 388, 25 U.S.C. § 348. Under the Act, the allotted land would remain in trust for 25 years, and during that period descend according to the laws of the state where the land was located. 25 U.S.C. § 348.

As successive generations came to hold the allotted lands, the parcels became splintered into multiple undivided interests, with some parcels having numerous owners. Because the land was held in trust and often could not be alienated or partitioned, the fractionation problem grew worse because each property owner was apt to have more than one heir. So too grew the difficulties of managing property held in this manner and having it maintain its value due to the divisibility problems caused by multiple ownership. *Hodel v. Irving,* 481 U.S. 704, 707, 708, 107 S.Ct. 2076, 2078, 2079, 95 L.Ed.2d 668 (1987).

In response, Congress ended further allotment of Indian lands by enacting the **Indian Reorganization Act of 1934.** Chapter 576, 48 Stat. 984, 25 U.S.C. § 461 et seq. However, this did not end the further compounding of fractionation which had already been set in motion. *Id.,* at 708, 107 S.Ct., at 2079.

Congress then passed the ILCA in 1983. Section 207, the escheat provision of the ILCA, provided:

No undivided fractional interest in any tract of trust or restricted land within a tribe's reservation or otherwise subjected to a tribe's jurisdiction shall descend [by intestacy or devise] but shall escheat to that tribe if such interest represents two percentum or less of the total acreage in such tract and has earned to its owner less than $100.00 in the preceding year before it is due to escheat. 96 Stat. 2519.

*Id.,* at 709, 107 S.Ct. at 2079. Congress made no provision for the payment of compensation to the owners of interests covered by section 207.

Section 207 of the ILCA was challenged on Fifth Amendment grounds in the United States District Court for the District of South Dakota. That court upheld its constitutionality. In 1984, while that case was on appeal to the United States Court of Appeals for the Eighth Circuit, Congress amended the ILCA, including section 207, in P.L. No. 98–608, 98 Stat. 3171, 3173. *Irving v. Clark,* 758 F.2d 1260, 1261 n. 1 (8th Cir.1985). 25 U.S.C. § 2206 is the amended version of section 207.

The amended version redefines "fractional interest" to mean one where it has earned less than $100.00 in any one of five (5) years prior to decedent's death. Plaintiffs represent that this change was made to prevent the escheat of land which, although failing to earn $100.00 in the year immediately preceding decedent's death, had, in prior years, been shown to be valuable.

Secondly, the amended version permits a the devise of escheatable interests "to any other owner of an undivided fractional interest in such parcel or tract of trust or restricted land." 25 U.S.C. § 2206(b). Lastly, the statute provides that the escheat provisions of the ILCA may be superseded by a tribal scheme approved by the Secretary of Interior. It directs the Secretary not to approve any plan, however, that "fails to accomplish the purpose of preventing further descent or fractionation of such escheatable interests." 25 U.S.C. § 2206(c).

As indicated above, in *Irving v. Clark,* 758 F.2d 1260 (8th Cir.1985), the Eighth Circuit considered the constitutionality of the ILCA's escheat provision. In *Irving,* the heirs and devisees of deceased members of the Oglala Sioux Tribe argued that the escheat provision deprived them of property without just compensation in violation of the Fifth Amendment. *Id.*

The Eighth Circuit concluded that the provision violated the Fifth Amendment in not providing compensation to the decedents' estates. That court grounded its decision on the finding that each Indian allottee gained, through the **General Allotment Act,** the vested right of passing his or her interests in their land at death, thus invoking Fifth Amendment protection. *Id.,* at 1268, 1269.

The Eighth Circuit noted that the escheat provision had been amended after oral arguments were heard. It found, however, that "its operation as challenged here is unaffected and the parties have not suggested that any of the changes put the plaintiffs outside the provisions coverage." *Id.,* at 1261 n. 1.

The United States Supreme Court affirmed the Eighth Circuit in *Hodel v. Irving,* 481 U.S. 704, 107 S.Ct. 2076, 95 L.Ed.2d 668 (1987). The Court noted that the Eighth Circuit had declared that not only the original version of section 207, but also the amended version *not before it,* unconstitutionally took property without compensation. In response, it stated:

Since none of the property which escheated in this case did so pursuant to the amended version of the statute, this "declaration" is, at best, dicta. We express no opinion on the constitutionality of section 207 as amended.

The *Hodel* court determined that the heirs and devisees had standing to challenge section 207. *Id.,* at 711, 712, 107 S.Ct., at 2080, 2081. It noted that in enacting section 207,

which precluded the passing on at death of small, undivided interests in Indian lands, Congress hoped that future generations of Indians would be able to make more productive use of Indian ancestral lands. *Id.*, at 712, 107 S.Ct., at 2081. Due to the highly fractionated ownership, these lands had been generally held for lease rather than improved and used by the owners. *Id.*, at 715, 107 S.Ct., at 2082. Encouraging the consolidation of Indian lands, therefore, was a public purpose of high order and the Court acknowledged that the fractionation problem on reservations may call for dramatic action to encourage consolidation. *Id.*, at 712, 107 S.Ct., at 2081.

Noting that the government had considerable latitude in regulating property rights of owners, the Court nevertheless found that the right to pass on property to one's heirs to be a valuable right. *Id.*, at 716–17, 107 S.Ct., at 2083–84. It also found that although the income from the land parcels could be properly deemed *de minimus*, the value, itself, of the parcels may not be. The BIA placed total approximate values of $2,700.00 and $1,1816.00 on the escheatable interests. *Id.*, at 714, 107 S.Ct., at 2082.

The Court determined that section 207 completely abolished both descent and devise of these property interests. This occurred even when the passing of the property to an heir may result in consolidation of property—as, for instance, when the heir already owns another undivided interest in the property. *Id.*, at 716, 107 S.Ct., at 2083. Since the escheatable interests were not necessarily *de minimus*, and the availability of *inter vivos* transfer did not obviate the need for descent and devise, the Court determined that a total abrogation of these rights may have been a taking and could not be upheld. *Id.*, at 717, 107 S.Ct., at 2084.

Three concurring opinions were written in *Hodel v. Irving*, *id.*, at 705, 107 S.Ct., at 2077. Justices Brennan and Scalia disagreed in their concurring opinions as to whether this decision limited the scope of a prior taking decision, *Andrus v. Allard*, 444 U.S. 51, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979). *Id.*, 481 U.S., at 718–19, 107 S.Ct., at 2084–85. Justice Stevens used a different analysis than the majority opinion. He relied upon the Due Process Clause of the Fifth Amendment in finding that the ILCA failed to give the heirs a fair opportunity to make arrangements to avoid operation of its escheat provision. *Id.*, at 728–30, 107 S.Ct., at 2089–91.

## B. *The Facts of this Case*

The statutory and case law history recounted above serve as a back drop for the presentation of the facts and issues in this case.

William Youpee was an enrolled member of the Sioux and Assiniboine Tribes of the Fort Peck Reservation. William Youpee died on October 19, 1990 at the age of 75. During his lifetime, he possessed, by devise or descent, undivided interests in allotted trust land on several Indian reservations. Plaintiffs are the potential heirs of William Youpee. At the time of Youpee's death, plaintiffs did not have any interest in his undivided trust land. Plaintiffs assert that Youpee was never notified in his lifetime that any of his heirship interests fell under the ILCA, were less than 2% of each allotment, or would escheat to the tribes.

Youpee's estate was assigned to Department of the Interior Administrative Law Judge (ALJ) Vernon Rausch to determine the heirs to and claims against the estate. ALJ Rausch held a hearing at Poplar, Montana on August 5, 1991. At this hearing, a 1981 will and last testament of William Youpee was placed into evidence. At the hearing, the ALJ stated that various certified interests would escheat to various tribes under the amended ILCA.

During the hearing, plaintiffs presented no evidence to rebut the presumption of escheatment under the ILCA. Plaintiffs did not raise the issue of whether decedent's interest in the certified allotments produced any income which would remove those interests from the category of escheatable property.

Plaintiffs assert that the heirs of the decedent heard for the first time at the hearing about the ILCA. They assert they were never told to produce evidence to rebut the presumption of escheatment. They also

state that they were not advised at the hearing that they could submit evidence post-hearing to rebut the presumption.

On April 28, 1992, the ALJ issued an order that approved the decedent's 1981 will, and decreed the partial distribution of William Youpee's estate. A final decree has not been issued because the estate has remained open while the paternity of Robert Martin, a Fort Peck Sioux who claims he is the illegitimate son of William Youpee, is determined.

In his partial decree, ALJ Rausch ruled that decedent Youpee's interest in several allotments on the Fort Peck, Standing Rock, and Devils Lake Sioux Reservations escheated to these respective tribal governments under the ILCA. This decision was based on BIA certifications from each agency that the decedent's interest in specific allotments was 2% or less undivided interest in an allotment, and that the designated devisee was not an owner of an existing share of that allotment.

ALJ Rausch also ruled that the 1981 will was the decedent's last will and testament, as a more recent will had not been signed. Plaintiffs assert that the more recent will, drafted in 1987, was presented to the decedent. After ALJ Rausch denied a rehearing on July 14, 1992, plaintiffs appealed the decree of partial distribution to the Department of Interior Board of Indian Appeals on the issue that escheatment of the decedent's land was unconstitutional. On August 25, 1992, that board dismissed plaintiffs' appeal because it was without jurisdiction to determine constitutional issues. Thereafter, plaintiffs filed this action.

## II.

### DISCUSSION

The parties have framed two issues for decision by this Court. The first is whether plaintiffs have standing in this matter. The second is whether the amended escheat provision of the ILCA violates the Fifth Amendment to the Constitution.

### A. Standing

■ In *Irving v. Clark,* 758 F.2d, at 1267–68, the Eighth Circuit concluded the heirs had standing to challenge the escheat provision. The challenge there was that the statute deprived them of property without just compensation. *Id.,* at 1261. On review, the Supreme Court, in *Hodel v. Irving,* 481 U.S., at 711, 107 S.Ct., at 2081, found that the heirs met constitutional standing requirements along with prudential standing criteria imposed by courts on assertions of third-party standing. In light of the factual and legal similarities between the heirs in that case and the heirs here, the ruling in *Hodel* as to standing appears applicable.

Further, the prudential criteria recognized by the Ninth Circuit in *Wauchope v. U.S. Dept. of State,* 985 F.2d 1407, 1411 (9th Cir. 1993), are satisfied here. These criteria are that the plaintiff must have suffered an "injury in fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute; the plaintiff must have a close relation to the third-party; and there must exist some hinderance to the third-party's ability to protect his or her own interests. *Id.*

■ Here, the injury-in-fact criteria is met because this statute has deprived the plaintiffs of the fractional interest they otherwise would have inherited. The second and third criteria are met by virtue of the fact that the plaintiffs' decedent is deceased and can no longer challenge the operation of this statute on his own behalf.

### B. Constitutionality

Defendant stresses that the objection of the *Hodel* court to the original escheat provision was its extraordinary character in abolishing *both* descent and devise, even when the passing of the property to the heir might result in consolidation of property. However, defendant asserts the amended version corrects the defect because, although still prohibiting intestate descent, the right to devise property is now permitted if the devisee owns an existing interest in that property.

Plaintiffs' position is that, notwithstanding this amendment, the right of descent still remains abolished regardless of the heir's status. Further, plaintiffs state that Indians

under the age of 18 (28 U.S.C. § 373), incompetent Indians, or those without heirs who have an interest in the land are not allowed the option to execute wills to devise their land. Therefore, as to these groups, the passing by both devise and descent is still precluded.

Specifically, plaintiffs assert that the right to devise is of little consolation to persons such as William Youpee, who did not have lineal heirs who possessed an interest in his allotment. They maintain that in very few circumstances will a child of a decedent possess an interest in trust land that his parent has inherited by lineal descent. Lineal descent is, therefore, sharply curtailed. As a result, plaintiffs assert that the ILCA places many Indian land owners in the possession of either devising land to a collateral heir or allowing the land to escheat to the tribe.

Plaintiffs argue, then, that the amended ILCA is unconstitutional because it produces the same evil of the original Act, i.e., prohibiting certain Indians (incompetents, those under 18, and those without heirs having an interest in the land) from passing their land by devise and descent.

The *Hodel* court found the original escheat provision to violate the "taking clause" of the Fifth Amendment in its extraordinary abrogation of both descent and devise of these property interests, even when the passing of property to an heir might result in consolidation of property. Thus, even when there was no conflict between the governmental purpose here—property consolidation and the property owner's rights of descent and devise—these rights were, nevertheless, completely abolished under the original escheat provision. *Id.*, 481 U.S., at 718, 107 S.Ct., at 2084.

■ The amended escheat provision corrects the defect of abolishing devises which would result in consolidation. However, for those property owners who are not legally capable of devising property, or for those like William Youpee, who do not have an heir who possesses an undivided interest in the escheatable property, the statute, as amended, continues to allow the total abolition of both descent and devise of such property.

The *Hodel* court found that the original escheat provision "goes too far." *Id.*, at 718, 107 S.Ct., at 2084. Part of its concern appeared to be that the statute frustrated devise even when it would have accomplished land consolidation. *Id.* However, it also found the statute to be extraordinary in character by its *per se* total abolition of descent and devise. It stated:

If we were to stop our analysis at this point, we might well find sec. 207 constitutional. But the character of the Government regulation here is extraordinary. In *Kaiser Aetna v. United States,* 444 U.S. [164], at 176 [100 S.Ct. 383, at 391, 62 L.Ed.2d 332], we emphasized that the regulation destroyed "one of the most essential sticks in the bundle of rights that are commonly characterized as property—the right to exclude others." Similarly, the regulation here amounts to virtually the abrogation of the right to pass on a certain type of property—the small undivided interest—to ones heirs. In one form or another, the right to pass on property—to one's family in particular—has been part of the Anglo–American legal system since feudal times ... Even the United States concedes that total abrogation of the right to pass property is unprecedented and likely unconstitutional. Tr. of Oral Arg. 12–14. Moreover, this statute effectively abolishes both descent and devise of these property interests even when the passing of the property to the heir might result in consolidation of property—as for instance when the heir already owns another undivided interest in the property.

*Id.*, 481 U.S. at 716, 107 S.Ct., at 2083.

In its history of examining whether a regulation of property amounts to a taking requiring just compensation, the Supreme Court has applied various tests. Peterson, *The Takings Clause: In Search of Underlying Principles,* Part I—A Critique of Current Takings Clause Doctrine, 77 California L.Rev. 130 (1989). In *Hodel,* it utilized the three-factor test espoused in *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 125–127, 98 S.Ct. 2646, 2659–2661, 57 L.Ed.2d 631 (1978). These three factors are the economic impact of the regulation, its interference with reasonable investment-

backed expectations, and the character of the government action. *Hodel,* 481 U.S., at 714, 107 S.Ct., at 2082.

It was to the *Hodel* court the extraordinary character of the government regulation which made this statute unconstitutional. *Id.,* 481 U.S., at 716, 107 S.Ct., at 2083. I do not deem the amendment to the escheat provision insignificant. First, it avoids the escheat of certain interests which may have been escheated under the original ILCA. To that extent, the impact of the regulation is mitigated. Secondly, it makes consolidation through devise possible, whereas under the original provision it was not. To that extent, it further promotes the legitimate government interest here of ameliorating fractionation—which I agree is a most serious problem.

Nevertheless, in balancing the interests involved, I find that the statute still retains the elements of a compensable government action. Property interests of the decedent and other certain classes of Indians, which are well entrenched in our society, remain totally and completely abrogated.

### *CONCLUSION*

In light of the above, I find that defendant should be enjoined from escheating to the Indian tribes the land of plaintiffs' decedent. I further find that the escheat provision under the ILCA is unconstitutional as violating the "takings clause" of the Fifth Amendment.

Accordingly,

**IT IS ORDERED** that plaintiffs' motion for summary judgment is granted.