Casimer **LEBEAU** and Vernon Ashley, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

**UNITED STATES of America, Defendant.**

**No. Civ. 99–4106.**

United States District Court, D. South Dakota, Southern Division.

Sept. 29, 2000.

John M. Grossenburg, Winner, SD, Charles Rick Johnson, Johnson, Eklund, Nicholson, Peterson & Fox, Gregory, SD, for plaintiff.

Jan L. Holmgren, United States Attorney's Office, Sioux Falls, SD, for defendant.

James E. McMahon, Boyce, Murphy, McDowell & Greenfield, Sioux Falls, SD, Bertram E. Hirsch, Great Neck, NY, for interested party, Sisseton–Wahpeton Sioux Tribe, Spirit Lake Tribe, and Sisseton–Wahpeton Sioux Counsel of the Assiniboine and Sioux Tribes.

## MEMORANDUM OPINION AND ORDER ON MOTIONS

PIERSOL, Chief Judge.

Pending before the Court are motions to intervene and to dismiss filed by The Sisseton–Wahpeton Sioux Tribe, the Spirit Lake Tribe and the Sisseton–Wahpeton Sioux Council of the Assiniboine and Sioux Tribes (collectively referred to herein as "the Tribes"). (Docs.11, 12.) Plaintiffs and the defendant filed briefs in response to the motions to intervene and dismiss and the Tribes filed a reply brief. For the reasons set forth below, the Court will grant the Tribes' motion to intervene for the sole purpose of seeking dismissal of this action under Fed.R.Civ.P. 19 and will deny the Tribes' motion to dismiss. This action will proceed among the plaintiffs and the defendant.

## I. *Background*

This action was filed by the plaintiffs to challenge the constitutionality of a recently enacted law which has the effect of diminishing by at least 28.3995% the funds appropriated by Congress in 1968, plus accumulated interest, and apportioned in 1972 for the benefit of plaintiffs and others similarly situated to satisfy a final judgment entered by the Indian Claims Commission [1] relating to the United States' breach of two treaties [2] involving approximately 27 million acres of land ceded to the United States by the Sisseton and Wahpeton Sioux Tribes in the 19th century. *See* Pub.L. No. 105–387, 112 Stat. 3471 (codified at 25 U.S.C. § 1300d–21 *et seq.*). Pursuant to the Act of June 19, 1968 Congress appropriated nearly $6 million to satisfy the judgment entered by the Indian Claims Commission (hereinafter referred to as "the Judgment Fund"). Pub.L. No. 90–352, 82 Stat. 239. In the Act of October 25, 1972 ("the 1972 Act"), Congress apportioned 25.0225% of the nearly $6 million Judgment Fund for distribution to Sisseton and Wahpeton Mississippi Sioux Tribe lineal descendants (hereinafter referred to as "lineal descendants") who were not members of the tribes listed in the 1972 Act but could trace lineal ancestry to tribal members listed on rolls acceptable to the Secretary of the Interior. Pub.L. No. 92–555, 86 Stat. 1168 (codified at 25 U.S.C. § 1300d, *et seq.*). Plaintiffs are lineal descendants who have been determined to be eligible to share in the distribution pursuant to the 1972 Act, but who to this day have not received any distribution of funds under the 1972 Act. The lineal descendants' share was originally $1,469,831.50 and was estimated in October 1998 to be approximately $15.2 million. S.Rep. No. 105–379 (1998).

---

1. *Sisseton and Wahpeton Bands or Tribes, et al. v. United States,* 18 Ind.Cl.Comm. 526–a (1967).

2. The Sisseton and Wahpeton Sioux Tribes ceded approximately two million acres of land to the United States by the Treaty of Prairie du Chian of July 15, 1830 (7 Stat. 328) and approximately 25 million acres of land by the Treaty of Traverse des Sioux of July 23, 1851 (10 Stat. 949). *See Sisseton–Wahpeton Sioux Tribe v. United States,* 686 F.Supp. 831, 833 (D.Mont.1988) (subsequent history omitted).

In an action filed in the Montana district court in 1987, the Tribes challenged the validity of the portion of the 1972 Act which apportions 25.0225% of the Judgment Fund to the lineal descendants. *Sisseton–Wahpeton Sioux Tribe v. United States,* 686 F.Supp. 831 (D.Mont.1988) ("*Sisseton–Wahpeton I* ") (subsequent history omitted). The Montana District Court held that the plaintiff Tribes' claims were barred by the statute of limitations, finding that the Tribes had waited nearly fifteen years to challenge Congress' apportionment of the Judgment Fund. *Id.* at 834, 837–38. The Ninth Circuit Court of Appeals agreed the Tribes' claims regarding the lineal descendants' share of the Judgment Fund were time-barred. *Sisseton–Wahpeton Sioux Tribe v. United States,* 895 F.2d 588, 597 (9th Cir.), *cert. denied,* 498 U.S. 824, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990) ("*Sisseton–Wahpeton II* "). On remand for consideration of the possibility of amending the complaint, the Montana District Court granted summary judgment to the United States and the Ninth Circuit again affirmed the denial of relief to the Tribes. *Sisseton–Wahpeton Sioux Tribe v. United States,* 90 F.3d 351, 356 (9th Cir.), *cert. denied,* 519 U.S. 1011, 117 S.Ct. 516, 136 L.Ed.2d 405 (1996) ("*Sisseton–Wahpeton III* "). During the pendency of the Tribes' claims in the federal court system, the lineal descendants did not receive any of the funds apportioned to them by the 1972 Act. In 1994, individuals claiming to be lineal descendants eligible to share in the Judgment Fund brought an action contending they were not given notice of the Judgment Fund and seeking to share in the 25.0225% apportioned to the lineal descendants pursuant to the 1972 Act. *See Loudner v. United States,* 108 F.3d 896 (8th Cir.1997). The Eighth Circuit ruled that the plaintiffs' claims in *Loudner* were not time-barred, *id.* at 903–04, and the Secretary of the Interior is currently in the process of determining how many additional lineal descendants will share in the Judgment Fund apportioned to the lineal descen-

dants, *see Loudner v. United States,* 108 F.3d 896 (D.S.D.1995) (on remand).

In 1998, Congress enacted the Mississippi Sioux Tribes Judgment Fund Distribution Act of 1998 ("the 1998 Act"), which is the subject of the present action. Pub.L. No. 105–387, 112 Stat. 3471 (codified at 25 U.S.C. § 1300d–21 *et seq.*). Pursuant to the 1998 Act, the Tribes will receive at least 28.3995% of the lineal descendants' share of the Judgment Fund apportioned to the lineal descendants in the 1972 Act if a final judgment is not entered in favor of one or more lineal descendants in this action. 25 U.S.C. §§ 1300d–23(a)(1), 1300d–26, and 1300d–27. If a final judgment is entered in favor of one or more lineal descendants in this action, the Tribes will not receive a distribution under the 1998 Act, and the lineal descendants will receive the share of the Judgment Fund apportioned to them in the 1972 Act. 25 U.S.C. § 1300d–27(e).

The Tribes seek to intervene in this action for the limited purpose of filing a motion to dismiss for failure to join necessary and indispensable parties pursuant to Rule 19 of the Federal Rules of Civil Procedure. The Tribes contend they are necessary parties pursuant to Rule 19(a) and they cannot be joined as parties herein because of their sovereign immunity. The Tribes contend the United States cannot adequately represent their interests in this action in light of the government's dual trust obligations to the Tribes and the plaintiffs and in light of the past opposition to the Tribes' claims in *Sisseton I, Sisseton II,* and *Sisseton III, supra.* The Tribes contend they are indispensable parties under Rule 19(b) and this action must, therefore, be dismissed.

The plaintiffs contend that the Court should allow the Tribes to intervene only for the limited purpose of defending the validity of the 1998 Act and should deny the Tribes' motion to dismiss under Rule 19. Plaintiffs assert that if the constitutional attack as to the validity of the 1998 Act is dismissed pursuant to Rule 19, the

plaintiffs should be allowed to proceed with a cause of action for damages against the United States based on the United States' breach of its trust obligations to the lineal descendants under the 1972 Act.

The United States does not oppose the Tribes' motion to intervene, but the United States contends granting the Tribes' motion to dismiss would deprive plaintiffs of any opportunity to challenge the validity of the 1998 Act even though Congress sought to assure that right to the lineal descendants. The United States contends it adequately represents the interest of the absent Tribes in this action and that the Tribes are, therefore, not necessary and indispensable parties in this action. Citing *Babbitt v. Youpee*, 519 U.S. 234, 117 S.Ct. 727, 136 L.Ed.2d 696 (1997) and *Hodel v. Irving*, 481 U.S. 704, 107 S.Ct. 2076, 95 L.Ed.2d 668 (1987), the United States asserts that lawsuits in which individuals allege Congress has acted in violation of their constitutional rights commonly proceed in the absence of tribes who have an interest in the litigation. Both the Tribes and the United States have the same interest in defending the constitutionality of the 1998 Act, according to the United States, which is the primary reason asserted by the United States for denying the Tribes' motion to dismiss pursuant to Rule 19.

## II. *Decision*

The Tribes seek to intervene in this action for the sole purpose of filing a motion to dismiss for failure to join necessary and indispensable parties. Joinder of necessary and indispensable parties is governed by Rule 19 of the Federal Rules of Civil Procedure, which states in part:

**Joinder of Persons Needed for Just Adjudication**

**(a) Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.....

**(b) Determination by Court Whenever Joinder not Feasible.** If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

The Court must first inquire whether an absent person is a "necessary" party pursuant to Rule 19(a). If the absent person is not necessary as defined in Rule 19(a), the Court ends the inquiry, denies the motion to dismiss for failure to join an absent person and proceeds with the action. *Gwartz v. Jefferson Memorial Hosp. Ass'n*, 23 F.3d 1426, 1428 (8th Cir.1994). However, if the Court determines an absent person is a necessary party and the absent person may not be joined pursuant to Rule 19(a), then the Court must determine, pursuant to Rule 19(b), whether the action should proceed among the parties before it, or should be dismissed. *Rochester Methodist Hosp. v. Travelers Ins. Co.*, 728 F.2d 1006, 1016 (8th Cir.1984).

■ The first inquiry is whether the Tribes are "necessary" parties pursuant to Rule 19(a). The Court concludes complete relief could be granted as between plaintiffs and the defendant herein. Plaintiffs seek a declaration that the 1998 Act is unconstitutional. The 1998 Act specifically provides that if a judgment is entered in favor of one or more lineal descendants in an action challenging the constitutionality or validity of distributions under the 1998 Act, then the provisions allowing distribution to the Tribes of at least 28.3995% of the lineal descendants' share of the Judgment Fund do not apply and the 1972 Act governs. *See* 25 U.S.C. § 1300d–27(e)(1). Therefore, if the Court were to enter a judgment in favor of the plaintiffs in this case, the matter would be settled and, contrary to the Tribes' assertion, the Tribes would not have a valid claim to share in the lineal descendants' portion of the Judgment Fund. Conversely, if the Court were to enter a judgment in favor of the defendant in this case, the Tribes would be entitled to distribution as set forth in the 1998 Act. *See* 25 U.S.C. § 1300d–23. The Court concludes, therefore, that the Tribes are not necessary parties under Rule 19(a)(1) because complete relief can be accorded among the plaintiffs and the defendant in the absence of the Tribes. Fed.R.Civ.P. 19(a)(1); *see, e.g., Shermoen v. United States,* 982 F.2d 1312, 1317 (9th Cir.1992), *cert. denied,* 509 U.S. 903, 113 S.Ct. 2993, 125 L.Ed.2d 688 (1993) (holding that complete relief could be accorded among the parties absent the Tribes at issue because if the challenged act was found to be unconstitutional, the individual Indian plaintiffs would receive all the relief for which they prayed).

Although the Tribes are not necessary parties pursuant to Rule 19(a)(1), the Court must consider whether the Tribes are necessary parties pursuant to Rule 19(a)(2). The Tribes claim an interest relating to the subject of this action because they will receive a significant portion of the lineal descendants' share of the Judgment Fund if a final judgment is not entered in favor of one or more lineal descendants in this action. The Tribes further contend they have an interest in preserving their sovereign immunity.

Even if an absent person claims an interest relating to the subject of the action, the person is not a necessary party under Rule 19(a)(2) unless such person is so situated that disposing of the action in the person's absence may "(i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of [the absent person's] claimed interest." Fed.R.Civ.P. 19(a). As to the inquiry under Rule 19(a)(2)(i), the Court does not conclude that disposition of this action in the absence of the Tribes will, as a practical matter, impair or impede the Tribes' abilities to protect their interests in this action. The United States is currently defending the validity of the 1998 Act in this action. (*See* Answer by United States, Doc. 7.) Although the United States may not advance every argument the Tribes would like to make, the United States has expressed the willingness to advance all legitimate arguments to defend the validity of the 1998 Act despite any past arguments asserted by the United States that the Tribes were not entitled to any portion of the lineal descendants' share of the Judgment Fund.

The Tribes contend that because the United States owes a trust obligation to the plaintiffs, the United States will not adequately represent the interests of the Tribes. The Court disagrees that the existence of a trust obligation to the plaintiffs would prevent the United States from adequately representing the interests of the Tribes in defending the constitutionality of the 1998 Act in this lawsuit. In *Babbitt v. Youpee,* the Supreme Court did not express any concern about the United States's ability to adequately represent the interests of the absent tribes in defending the constitutionality of an act challenged by individual Indians. 519 U.S. 234, 236–

45, 117 S.Ct. 727, 136 L.Ed.2d 696. In *Babbitt,* the individual Indian plaintiffs alleged that section 207 of the Indian Land Consolidation Act, Pub.L. No. 97–459, 96 Stat. 2519 (codified, as amended, 25 U.S.C. § 2206) ("ILCA") violated the Fifth Amendment by authorizing the taking of real property without just compensation. 519 U.S. at 236–37, 117 S.Ct. 727. The amended section of the ILCA at issue in *Babbitt* provided that certain fractional interests in Indian lands held by individual Indians would transfer, or "escheat," to the tribe upon the death of the owner of the interest. .25 U.S.C. § 2206; *Babbitt,* 519 U.S. at 236–37, 117 S.Ct. 727. In *Babbitt,* the Supreme Court upheld the decisions by the Ninth Circuit Court of Appeals and the Montana District Court holding the amended section was unconstitutional. 519 U.S. at 237, 117 S.Ct. 727; *Youpee v. Babbitt,* 67 F.3d 194 (9th Cir. 1995); *Youpee v. Babbitt,* 857 F.Supp. 760 (D.Mont.1994).

Prior to the decision in *Babbitt, supra,* a previous version of the ILCA was declared unconstitutional by the Supreme Court and the Eighth Circuit. *Hodel,* 481 U.S. at 718, 107 S.Ct. 2076; *Irving v. Clark,* 758 F.2d 1260 (8th Cir.1985). Neither the Supreme Court nor the Eighth Circuit expressed any concern pursuant to Rule 19 about the United States' ability to adequately represent the absent tribes in defending the ILCA from a constitutional challenge by individual Indian plaintiffs where the law resulted in the tribes receiving significant property that was previously granted to the individual Indian plaintiffs' ancestors. The Court finds the present case closely analogous to the factual setting in *Babbitt,* 519 U.S. at 236–45, 117 S.Ct. 727 and *Hodel,* 481 U.S. at 706–18, 107 S.Ct. 2076, wherein any trust obligation the United States may have owed to the individual Indian plaintiffs did not prevent the United States from adequately representing the interests of the absent tribes. It is interesting to note that in *Hodel,* the Tribes' present counsel filed a brief for the Sisseton–Wahpeton Sioux Tribe as amicus curiae urging reversal of

the Eighth Circuit's decision finding the law unconstitutional and apparently did not advocate that the case should· be dismissed under Rule 19 by arguing that the United States was unable to adequately represent the interest of the absent tribe in light of a conflicting trust obligation to the individual Indian plaintiffs therein. 481 U.S. at 706, 107 S.Ct. 2076.

The Tribes' attempt to distinguish *Babbitt, supra,* and *Hodel, supra,* by contending those cases did not involve a Rule 19 defense and the property interests in those cases had not vested in any tribe and may never have vested. Although the Supreme Court, the Ninth Circuit, the Eighth Circuit and the Montana District Court did not explicitly address the issue of whether the absent tribes were necessary and indispensable parties requiring dismissal under Rule 19 because the absent tribes enjoined sovereign immunity and could not be joined in the cases discussed above, the Court will assume the implications of Rule 19 were considered in those cases. *See e.g., Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 111, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) (stating that a reviewing court has an independent duty to raise sua sponte the issue of whether an absent person is a necessary and indispensable party which requires dismissal of the action).· The Ninth Circuit has repeatedly raised Rule 19 issues in cases where the parties have not raised the issue in the district court. *See UOP v. United States,* 99 F.3d 344, 347 (9th Cir. 1996) (sua sponte raising concerns regarding joinder pursuant to Rule 19 where the parties did not raise the issue in the district court and the district court did not rule on the issue); *Pit River Home & Agric. Coop. Ass'n v. United States,* 30 F.3d 1088, 1099 (9th Cir.1994) (holding the Ninth Circuit may consider whether an absent person is an indispensable party to the pending litigation although the district court did not rule on the issue); *CP Nat'l Corp. v. Bonneville Power Admin.,* 928 F.2d 905, 911 (9th Cir.1991) (same). The Ninth Circuit sua sponte raised the issue

of failure to join indispensable parties both before and after its decision in *Youpee,* 67 F.3d at 195–200, lending support to the Court's conclusion that, although not expressly ruled upon, the issue of whether the Tribes were necessary and indispensable parties was considered by the Ninth Circuit in *Youpee.*

The Tribes further contend the Supreme Court's decisions in *Babbitt, supra,* and *Hodel, supra,* are distinguishable because "the law at issue in those cases dealt with the universe of tribes and with property interest that, unlike those in the case at bar, had not vested in any tribe and, depending on devise and descent choices, might never vest in any tribe. In other words, the tribal interests in those cases do not possess the constitutional dimension of the interests of the Tribes in the case at bar." (The Tribes' Reply Brief, Doc. 30 at 12, n. 5.) The Court disagrees. The Tribes cannot credibly argue that their interests under Pub.L. No. 105–387 have "vested," because the Tribes will not receive a distribution under Pub.L. No. 105–387 if final judgment is entered in favor of one or more lineal descendants in this action. *See* 25 U.S.C. § 1300d–27(e). The Court finds that *Babbitt,* 519 U.S. at 236–45, 117 S.Ct. 727, and *Hodel,* 481 U.S. at 706–18, 107 S.Ct. 2076, compel a finding that the Tribes are not necessary parties in this action. Based upon the above discussion, the Court holds that disposition of the instant case in the absence of the Tribes would not, as a practical matter, impair or impede the Tribes' ability to protect their interests in this action. *See* Fed.R.Civ.P. 19(a)(2)(i).

The Tribes argue they are necessary parties under Rule 19(a)(2)(ii) because absent their involvement in this action, the United States will be subject to inconsistent obligations in light of the United States' trust obligations to both the plaintiffs and the Tribes. Under the rationale advanced by the Tribes, the United States will have inconsistent obligations regardless of whether the Tribes are parties to this action. The Tribes are essentially arguing that the United States is violating its trust obligations to the plaintiffs by seeking to defend the constitutionality of the 1998 Act in this lawsuit, and that because of the trust obligations to the plaintiffs the United States will not make all arguments which would favor the Tribes. If the Court were to accept the Tribes' argument regarding inconsistent obligations, the United States would rarely, if ever, be able to defend any statute enacted by Congress if it involves claims adverse to any particular individual Indian or Indian tribe. *Cf. Babbitt,* 519 U.S. at 236–45, 117 S.Ct. 727 (United States defended the validity of the Indian Land Consolidation Act against individual Indian plaintiffs' constitutional challenges); *Hodel,* 481 U.S. at 706–18, 107 S.Ct. 2076 (same). Pursuant to the Tribes' argument, the United States will have inconsistent obligations whether or not the Tribes are parties to this lawsuit. Therefore, disposing of this action among the plaintiffs and the defendant will not leave the United States with inconsistent obligations *by reason of* the Tribes' claimed interest as set forth in Rule 19(a)(2)(ii).

■ Based upon the above discussion, the Court concludes that the Tribes are not "necessary" parties as defined in Rule 19(a). However, even if the Tribes were necessary parties under Rule 19(a), the Court holds that "in equity and good conscience" this action should proceed among the plaintiffs and the defendant in the absence of the Tribes. It appears that the Tribes are entitled to sovereign immunity and thus cannot be joined in this action. *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (stating that Indian tribes possess the common-law immunity from suit traditionally enjoyed by sovereign powers, subject to the superior and plenary control of Congress). Rule 19(b) provides that if a necessary person cannot be joined as a party, the Court must evaluate whether the absent person is indispensable considering the four factors listed in Rule 19(b).

The first factor to consider is to what extent a judgment rendered in the Tribes' absence might be prejudicial to the Tribes or to the plaintiffs and defendant. The Tribes initially argue, in connection with the analysis under Rule 19(a), that a judgment in favor of the lineal descendants would not bind the Tribes. (Tribes' Brief, Doc. 13 at 5.) The Court disagrees with the Tribes' argument because Congress specifically provided that if a final judgment is entered in favor of one or more lineal descendants in an action challenging the 1998 Act, then the 1972 Act would govern and the Tribes would not receive a distribution under the 1998 Act. *See* 28 U.S.C. § 1300d–27(e)(1). Therefore, a judgment rendered in the absence of the Tribes would be prejudicial to them. The Tribes' interests are not, however, unprotected in this action because the United States seeks to have the 1998 Act upheld against plaintiffs' constitutional challenge. *See, e.g., United States ex rel. Steele v. Turn Key Gaming, Inc.*, 135 F.3d 1249, 1251–52 (8th Cir.1998) (holding that the absent tribe would not be prejudiced where the tribe's interests were the same as the plaintiff's interests). Congress recognized the likelihood that one or more of the lineal descendants would seek to challenge the 1998 Act, and Congress provided the result if such a challenge succeeded. *See* 25 U.S.C. § 1300d–27(e)(1). In *Babbitt*, 519 U.S. at 236–37, 117 S.Ct. 727, and *Hodel*, 481 U.S. at 716–18, 107 S.Ct. 2076, it was clear that a judgment rendered in the absence of the Oglala Sioux Tribe would be prejudicial to the tribe because a holding in favor of the plaintiffs (individual tribal members) providing that the escheat provision of the ILCA was unconstitutional would result in the Oglala Sioux Tribe not receiving the escheatable interests under the ILCA. Despite the potential prejudice to the Oglala Sioux Tribe, none of the Courts considering *Babbitt* and *Hodel, supra*, expressed any concern about the United States' ability to represent the absent tribe's interest in the individual Indians' challenge to the ILCA.

The second factor under Rule 19(b) is to what extent the prejudice to the Tribes could be lessened or avoided by the shaping of relief. The Court agrees with the Tribes' assertion that if Pub.L. No. 105–387 is declared unconstitutional or otherwise invalid, there are no measures the Court could take to lessen the prejudice of such a disposition to the Tribes. Congress, however, recognized that such a disposition could occur, and explicitly stated the 1972 Act would govern in the event a final judgment was entered in favor of one or more lineal descendants. *See* 25 U.S.C. § 1300d–27(e)(1).

The third factor to consider under Rule 19(b) is whether a judgment rendered in the Tribes' absence will be adequate. As stated by the Court in connection with the analysis under Rule 19(a) regarding the "complete relief" inquiry and under the first factor to consider under Rule 19(b), the Court concludes a final judgment in favor of the plaintiffs in this action would be adequate to defeat the distributions to the Tribes under the 1998 Act. *See* 25 U.S.C. § 1300d–27(e)(1).

The fourth factor in determining whether an absent person is indispensable under Rule 19(b) is whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. The Tribes acknowledge that absent a legislative amendment to Pub.L. No. 105–387, plaintiffs may not have an adequate remedy if this action is dismissed. The plaintiffs have been waiting for almost thirty years to receive money that was apportioned to them under the 1972 Act. The Tribes successfully delayed any distribution to the plaintiffs during the pendency of *Sisseton I, Sisseton II,* and *Sisseton III, supra,* during which time the Tribes have had the use of their portion of the Judgment Fund. Moreover, Congress recognized the potential constitutional implications of enacting the 1998 Act and Congress further recognized the lineal descendants would likely challenge the validity of the 1998 Act. *See* 25 U.S.C. § 1300d–27. The Court concludes the

fourth factor weighs heavily in favor of a finding that the Tribes are not indispensable parties in this action because the plaintiffs would not have an adequate remedy to challenge the constitutionality of the 1998 Act if this action is dismissed.

Citing decisions from the Ninth Circuit, the Tribes contend that their interest in preserving their sovereign immunity outweighs plaintiffs' interest in litigating their claim that the 1998 Act is unconstitutional or otherwise invalid. *See Clinton v. Babbitt,* 180 F.3d 1081, 1090 (9th Cir.1999); *Pit River,* 30 F.3d at 1102–03; *Quileute Indian Tribe v. Babbitt,* 18 F.3d 1456, 1460–61 (9th Cir.1994); *Shermoen v. United States,* 982 F.2d 1312, 1317–18 (9th Cir.1992); *Confederated Tribes of Chehalis Indian Reservation v. Lujan,* 928 F.2d 1496, 1499–1500 (9th Cir.1991); *Fluent v. Salamanca Indian Lease Authority,* 928 F.2d 542, 548 (2nd Cir.), *cert. denied,* 502 U.S. 818, 112 S.Ct. 74, 116 L.Ed.2d 48 (1991); *Enterprise Management Consultants, Inc. v. United States ex re. Hodel,* 883 F.2d 890, 894 (10th Cir.1989); *Wichita and Affiliated Tribes of Oklahoma v. Hodel,* 788 F.2d 765 (D.C.Cir.1986); *Lomayaktewa v. Hathaway,* 520 F.2d 1324 (9th Cir.1975), *cert. denied,* 425 U.S. 903, 96 S.Ct. 1492, 47 L.Ed.2d 752 (1976). All of the cases cited by the Tribes in support of the argument that their sovereign immunity outweighs the plaintiffs' interest in litigating their claim either involved conflicting claims asserted by various tribes in relation to Indian lands or claims related to contracts, leases or agreements to which the absent tribes were parties. *Clinton,* 180 F.3d at 1083–86 (tribal members sought to challenge, on equal protection principles, the terms of proposed leases with an absent tribe pursuant to an agreement entered into by the absent tribe); *Pit River,* 30 F.3d at 1092–94, (group of Indian families sought a declaration that they were the beneficial owners of a certain piece of real property despite the Secretary of the Interior's declaration that the absent tribe was the beneficial owner); *Quileute,* 18 F.3d at 1457–59 (intertribal dispute concerning governance of reservation lands); *Shermoen,* 982 F.2d at 1314–17 (intertribal conflict regarding profits from reservation land); *Confederated Tribes,* 928 F.2d at 1497–99 (intertribal conflict where plaintiffs' were seeking to challenge the United States' continuing recognition of the absent tribe as the sole governing authority for a reservation); *Fluent,* 928 F.2d at 543–45 (lessees of tribal lands sought to compel the absent tribe, as lessor, to renew their leases for up to ninety-nine years); *Enterprise Management,* 883 F.2d at 893 (party to a bingo management contract with an absent tribe sought to obtain validation of the contract under 25 U.S.C. § 81); *Wichita,* 788 F.2d at 767–68 (intertribal conflict regarding proceeds from Indian land); *Lomayaktewa,* 520 F.2d at 1324–25 (tribal members sought to void lease entered into by absent tribe).

An additional case cited by the Tribes in support of the argument that a necessary party's sovereign immunity outweighs the plaintiff's interest in litigating his claim involved a tribe seeking to obtain validation of a compact with the State of Kansas regarding gambling operations on the tribe's reservation where the Supreme Court of Kansas had held the compact was not approved by an official empowered to do so under state law. *Kickapoo Tribe of Indians v. Babbitt,* 43 F.3d 1491, 1493–97 (D.C.Cir.1995). In *Kickapoo* it was determined that the State of Kansas could not be joined due to its sovereign immunity and that as a party to the compact at issue it would be prejudiced by a judgment therein. 43 F.3d at 1495–1500. Moreover, the United States could not represent the State's interests in light of the United States' trust obligations to the plaintiff tribe. *Id.* at 1499.

The Court concludes the instant case is distinguishable from all of the cases cited by the Tribes in support of their argument that the Tribes' sovereign immunity outweighs the lineal descendants' interest in litigating their claim. In this case, unlike the cases cited by the Tribes, the

United States is in a position to adequately protect the interests of the Tribes in defending the validity of the 1998 Act. The United States was in a similar position in *Babbitt,* 519 U.S. at 236–245, 117 S.Ct. 727 and *Hodel,* 481 U.S. at 706–718, 107 S.Ct. 2076, wherein the Supreme Court, the Ninth Circuit and the Eighth Circuit did not find it necessary to raise any Rule 19 issues or question the United States' ability to represent the interests of the absent tribe.

The ultimate inquiry under Rule 19(b) in determining whether an absent person is indispensable, is "whether in equity and good conscience the action should proceed among the parties before it." The plaintiffs are lineal descendants who have waited nearly thirty years to receive their share of the Judgment Fund apportioned to them in 1972. *See* 25 U.S.C. §§ 1300d–3, 1300d–4; *Sisseton–Wahpeton Sioux Tribe,* 90 F.3d at 355 (stating the Secretary of the Interior had determined the lineal descendants were eligible to receive a $746.00 share of the Judgment Fund); *Loudner,* 108 F.3d at 898–900 (reciting history of the 1972 Act and stating that as of 1997 the Secretary had not distributed the lineal descendants' share of the Judgment Fund). The Tribes have received their portion of the Judgment Fund as apportioned in the 1972 Act. *See* 25 U.S.C. § 1300d–4. The Tribes' actions in initiating and pursuing lawsuits from 1987 to 1996 resulted in plaintiffs not receiving any distribution under the 1972 Act, at least during the pendency of those lawsuits. The Tribes now seek to prevent the lineal descendants from litigating their claim that the 1998 Act violates their Fifth Amendment rights by taking a significant portion of their share of the Judgment Fund and distributing it to the Tribes. Considering all of the factors listed in Rule 19(b) and based upon the above discussion, the Court finds equity and good conscience dictate that the validity of the 1998 Act be decided in this action among the plaintiffs and the defendant, and that the Tribes are not indispensable parties herein. The Court concludes the Tribes are not necessary and indispensable parties pursuant to Rule 19 and this action will proceed among the plaintiffs and the defendant. Accordingly,

**IT IS ORDERED:**

1. That the Sisseton–Wahpeton Sioux Tribe, the Spirit Lake Tribe and the Sisseton–Wahpeton Sioux Council of the Assiniboine and Sioux Tribes' Motion to Intervene, Doc. 11, is granted for the sole purpose of allowing the moving Tribes to seek dismissal of this action under Rule 19 of the Federal Rules of Civil Procedure.

2. That the Sisseton–Wahpeton Sioux Tribe, the Spirit Lake Tribe and the Sisseton–Wahpeton Sioux Council of the Assiniboine and Sioux Tribes' Motion to Dismiss Pursuant to Rule 19, Doc. 12, is denied.

3. That the Sisseton–Wahpeton Sioux Tribe, the Spirit Lake Tribe and the Sisseton–Wahpeton Sioux Council of the Assiniboine and Sioux Tribes are not joined as parties to this action.