**Barry LEBEAU, Individually and on on behalf of all other persons similarly situated, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV.02–4168.**

United States District Court, D. South Dakota, Southern Division.

Aug. 18, 2004.

---

John M. Grossenburg, Winner, Charles Rick Johnson, Johnson, Eklund, Nicholson & Peterson, Gregory, Mark V. Meierhenry, Danforth, Meierhenry & Meierhenry, Sioux Falls, SD, for Plaintiff.

Jan L. Holmgren, United States Attorney's Office, Sioux Falls, SD, for Defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

The parties filed cross motions for summary judgment, Docs. 52 and 65. The motions have been fully briefed and the Court heard oral argument on the motions on August 9, 2004, where the Class was represented by class counsel, J.M. Grossenburg and Mark Meierhenry, and class representative Barry LeBeau, and the Defendant was represented by Assistant United States Attorney Jan Holmgren. During the hearing, the parties stipulated that the record in the case of *LeBeau v. United States*, CIV 99–4106 (D.S.D.) can be incorporated into the record of this case. Having carefully considered the parties' written submissions and oral argument, the Court will grant Plaintiff's Motion for Summary Judgment and will deny Defendant's Motion for Summary Judgment.

## BACKGROUND

Plaintiff filed this action pursuant to the "Little" Tucker Act, 28 U.S.C. § 1364(a)(2), seeking an award of money damages for the Defendant's breach of trust in unreasonably delaying the distribution of a judgment fund, which resulted in Plaintiff's share in the fund being decreased by 28.3995% when Congress enacted the Mississippi Sioux Tribes Judgment Fund Distribution Act of 1998 ("the 1998 Act"), Pub.L. No. 105–387, 112 Stat. 3471 (codified at 25 U.S.C. § 1300d–21 *et seq.*). The fund was appropriated in 1968, Pub.L. No. 90–532, 82 Stat. 239, and in 1972 Congress allocated 25.0225% of the fund for distribution to Sisseton and Wahpeton Mississippi Sioux Tribe lineal descendants who were not members of certain listed tribes. *See* Pub.L. No. 92–555, 86 Stat. 1168 (codified at 25 U.S.C. § 1300d, *et seq.* (1983) (amended 1998)). For ease of reference, the Court will refer to this fund as "the Judgment Fund." In order to distribute the Judgment Fund, Congress directed that a roll of lineal descendants be prepared. *See* 25 U.S.C. §§ 1300d–3(b) and 1300d–4(c) (1983) (amended 1998). Plaintiff claims that Defendant is liable for unreasonably delaying

the preparation of the roll, which was a prerequisite to distribution of the lineal descendants' share of the Judgment Fund. The 1998 Act reallocated 28.3995% of the lineal descendants' share of the Judgment Fund to the tribes who were also beneficiaries of the Judgment Fund in 1972. The tribes received their distributions from the Judgment Fund years before they lobbied Congress to enact the 1998 Act. Thus, the only money remaining in the Judgment Fund was allocated to the lineal descendants at the time the 1998 Act was enacted.

This action was filed after the Court denied class certification in an action entitled *Casimir LeBeau v. United States,* CIV 99–4106 (D.S.D.), wherein the plaintiffs alleged the same claim the Plaintiff alleges in the present action. As mentioned above, the parties have stipulated that the record in the *LeBeau* case, CIV 99–4106, can be incorporated into the record of the present case. In an Order filed on February 5, 2002, the Court refused to certify a class in CIV 99–4106 because the motion for class certification was untimely. *See LeBeau,* CIV 99–4106 (Doc. 107, Feb. 5, 2002). The merits of the class certification issue were not addressed by the Court in the *LeBeau* case, CIV 99–4106.

The two plaintiffs in *LeBeau,* CIV 99–4106, prevailed on their breach-of-trust claim for delay, which is the same claim alleged by Plaintiff and the class in this action, and they were each awarded $482.79 plus interest. *See LeBeau v. United States,* 215 F.Supp.2d 1046, 1064 (D.S.D.2002). The damage award was calculated based upon a partial distribution that the Bureau of Indian Affairs' ("BIA") Aberdeen Area Office requested to make to approximately 1,900 lineal descendants in 1982. *See id.* at 1051, 1062–63. The amount of the partial distribution would have been $1,700 per lineal descendant if the BIA would have approved it. *See id.*

The damages were calculated by multiplying the partial distribution of $1,700 by 28.3995%, which was the amount the lineal descendants' share was decreased pursuant to the 1998 Act. Plaintiff and the other class members seek a similar award of money damages in this action, with the only difference being an increase in the interest award for the additional time that has elapsed since the two plaintiffs in *LeBeau,* CIV 99–4106 recovered on their breach of trust claim.

The Court stayed this action on March 4, 2003 pending a final determination in *LeBeau,* CIV 99–4106. Although the plaintiffs and the defendant in *LeBeau,* CIV 99–4106, appealed the Court's decision in that case, the appeals were dismissed on agreement of the parties. After the appeals were dismissed in that case and it was final, the stay in the present case was dissolved on August 12, 2003. (Order Lifting Stay, Doc. 9.)

The Court certified this action as a class action and defined the class as follows:

All Sisseton and Wahpeton Sioux Tribe lineal descendants who were determined to be eligible, by application filed on or before November 1, 1973, to share in the judgment fund appropriated in 1968, Pub.L. No. 105–387, 112 Stat. 3471, and to be distributed pursuant to the Act of October 25, 1972, codified at 25 U.S.C. § 1300d, *et seq.* (1983). Excluded from this class are those persons who timely request exclusion from this class, as well as Casimer LeBeau and Vernon Ashley.

## DISCUSSION

Summary judgment is appropriate if the moving party establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, this Court views the evidence in a light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial.'" *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir.1992) (quoting Fed.R.Civ.P. 56(e)).

The parties have stipulated, and the Court accepts the stipulation, that the record in the *LeBeau*, CIV 99–4106, case can be incorporated into the record in this case, which includes a transcript of the court trial held in that case. The facts and claims asserted by the Plaintiff class in this action were also asserted by the two plaintiffs in *LeBeau*, CIV 99–4106. The Court issued three published opinions in *LeBeau*, CIV 99–4106, which describe in detail the factual and legal claims asserted by the two plaintiff lineal descendants. *See Lebeau v. United States*, 115 F.Supp.2d 1172 (D.S.D.2000) (decision on three Tribe's motions to intervene and dismiss the action); *LeBeau v. United States*, 171 F.Supp.2d 1009 (D.S.D.2001) (holding that the lineal descendants did not have a vested property interest to prevail on their Fifth Amendment takings claims and denying summary judgment on plaintiffs' breach of trust claim); *LeBeau*, 215 F.Supp.2d at 1062 (holding that the government breached its trust duties by unreasonably delaying a requested partial distribution of the Judgment Fund and unreasonably delaying the preparation of the roll and distributing the Judgment Fund). In deciding the breach of trust issues, the Court found the *LeBeau* case was governed by the Supreme Court's decision in *United States v. Mitchell*, 463 U.S. 206, 219–28, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (*Mitchell II*), which held that statutes and regulations giving the Federal Government full responsibility to manage certain Indian resources and land for the benefit of the Indians established fiduciary duties of the government, the government breached those duties, and those statutes and regulations could be fairly interpreted as mandating compensation for money damages caused by the breach. *See LeBeau*, 171 F.Supp.2d at 1028–29; *LeBeau*, 215 F.Supp.2d at 1058–59. In an earlier related decision, the Supreme Court held that a general allotment act did not render the United States answerable in money damages for alleged mismanagement of the same Indian resources and land at issue in *Mitchell II*. *See United States v. Mitchell*, 445 U.S. 535, 546, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (*Mitchell I*).

During the hearing on August 9, 2004, the Court asked the parties to set forth their views on how the present case is distinguishable from the related *LeBeau* case, CIV 99–4106. Neither Plaintiff nor Defendant identified any factual differences between the two cases. Plaintiff argued, in part, that this Court's prior decisions on the plaintiff's breach of trust claim in *LeBeau*, CIV 99–4106, are supported by the Supreme Court's recent decision in *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003). In *White Mountain*, the Supreme Court held that the statute under consideration, creating a Tucker Act right, was reasonably amenable to the reading that it mandates a right of recovery in money damages against the United States. 537 U.S. at 471–72, 123 S.Ct. 1126. In reaching this decision, the Supreme Court evaluated whether the statutes and regulations fell within *Mitchell I* or *Mitchell II*'s governance, and concluded the case was aligned with *Mitchell*

*II. See Mitchell II*, 537 U.S. at 472–79, 123 S.Ct. 1126. In contrast, Defendant contends that this case is governed by the Supreme Court's opinion in *United States v. Navajo Nation*, 537 U.S. 488, 507–08, 514, 123 S.Ct. 1079, 155 L.Ed.2d 60 (2003), which was issued on the same day as *White Mountain*, and held that the statutes and regulations under consideration were aligned with *Mitchell I* and did not create a fiduciary duty enforceable in an action for damages under the Indian Tucker Act.

■■■ The Court recognizes that the Class in this case is not entitled to the benefit of the collateral estoppel doctrine because the Supreme Court held that "nonmutual offensive collateral estoppel is not to be [used against] the United States." *United States v. Mendoza*, 464 U.S. 154, 158, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). Thus, the Court has considered the Defendant's arguments rather than finding it is barred from litigating the claims asserted by the Class. Having reviewed the decisions in *LeBeau*, 171 F.Supp.2d at 1028–31 and *LeBeau*, 215 F.Supp.2d at 1049–64, in light of the Supreme Court's decisions in *White Mountain, supra,* and *Navajo Nation, supra,* the Court finds the present case is governed by the Supreme Court's decision in *Mitchell II*, 463 U.S. at 218–28, 103 S.Ct. 2961, rather than the decision in *Mitchell I,* 445 U.S. at 538–46, 100 S.Ct. 1349. The Court again concludes that the 1972 Act establishes fiduciary obligations of the government in preparing the roll of lineal descendants and distributing the funds in the Judgment Fund and that it "can 'fairly be interpreted as mandating compensation by the Federal Government for damages sustained.'" *LeBeau*, 171 F.Supp.2d at 1029 (quoting *Mitchell II*, 463 U.S. at 226, 103 S.Ct. 2961). For the reasons stated in the Court's decisions in *LeBeau*, 215 F.Supp.2d at 1059–62, the Court further finds that the Federal Government breached its trust duties owed to the Class members by unreasonably delaying the partial distribution requested in 1982 and by unreasonably delaying the preparation of the roll and distributing the Judgment Fund prior to the issuance of a Montana court's preliminary injunction on May 8, 1987, which injunction was explained in *LeBeau*, 171 F.Supp.2d at 1013–14, and *LeBeau*, 215 F.Supp.2d at 1051–52.

One of the issues raised again by the Defendant is that the lineal descendants' breach of trust claims are barred by the six-year statute of limitations set forth in 28 U.S.C. § 2401(a). The Court fully examined and rejected the statute of limitations' issues in *LeBeau*, 215 F.Supp.2d at 1054–59, and finds no persuasive reason to alter that decision.

■■■ The remaining issue is whether the Class members are entitled to recover the same amount of damages as the two lineal descendants in *LeBeau*, CIV 99–4106. Defendant asserts that the Court's calculation of damages in *LeBeau*, 215 F.Supp.2d at 1063–64, should not be applied to the Class members because the total number of lineal descendants currently eligible to share in the Judgment Fund is 7,116, which number was unknown when the Court calculated and awarded damages in *LeBeau*, 215 F.Supp.2d at 1063–64. The Defendant's argument, however, is focused on the Class members *current* proportionate share of the Judgment Fund, rather than the Class members' share of the Judgment Fund at the time the Court found the Federal Government breached its trust duties. Considering the trust duties that were breached and the time frame in which they were breached, essentially from 1972 to 1987, as more fully explained in the Court's previous opinion, the Court finds that the appropriate measure of dam-

ages is to be based upon the amount of the partial distribution the Class members would have received if the requested partial distribution had been made. *See LeBeau,* 215 F.Supp.2d at 1062–64 (citing *John Morrell & Co. v. Local Union 304A,* 913 F.2d 544, 557 (8th Cir.1990) (explaining that a plaintiff must prove his damages with "reasonable certainty")). As was explained in *LeBeau,* 215 F.Supp.2d at 1063, the Class members would have received $1,700 if the partial distribution had been approved. The damages awarded in that case were calculated by decreasing the amount of the above partial distribution by 28.3995 per cent, which was the amount the lineal descendants' share was decreased pursuant to the 1998 Act. This total is $482.79 for each lineal descendant.

After the decision in *LeBeau,* 215 F.Supp.2d at 1063–64 was issued, the Court required the parties to submit supplemental briefs on the issue of interest. The Court found that the principal portion of the $482.79 figure explained above was $219.70 and the interest portion was $263.09. The Court was required to designate a date as the ending period for the accrual of interest because the Office of Trust Funds Management ("OTFM") could not provide a daily accrual rate that could be used prospectively by the Court to calculate interest as the interest rate on the Judgment Fund changes daily. Recognizing the difficulty in calculating interest, the two plaintiffs in *LeBeau,* CIV 99–4106, agreed to an ending date for the calculation of interest damages. The Court will direct the parties to negotiate an ending date for the calculation of interest damages. If the parties are able to reach a decision on the ending date, the defendant will be directed to submit an interest calculation on the principal portion of the 1982 figure, i.e., $219.70, from January 1, 1983 to the agreed upon date. If the parties are unable to agree upon an ending date, each side shall submit a separate proposal for an ending date. Accordingly,

IT IS ORDERED:

1. That the record in the case *LeBeau v. United States,* CIV 99–4106 (D.S.D.) is incorporated into the record of the present case.

2. That Plaintiff's Motion for Summary Judgment, Doc. 52, is granted.

3. That Defendant's Motion for Summary Judgment, Doc. 65, is denied.

4. That the parties shall attempt to reach an agreement on the ending date for purposes of the calculation of interest. If the parties are unable to reach an agreement, they shall submit a separate proposal for an ending date to the Court on or before August 25, 2004.

5. That if the parties reach an agreement on the ending date, on or before August 25, 2004, the Defendant shall submit an interest calculation on the principal portion of the 1982 figure, i.e., $219.70, from January 1, 1983 to the agreed upon date.

6. That, on or before September 1, 2004, Plaintiff shall submit to the Court a proposed notice to the Class that a common fund has been determined by Order of the Court and advising that class members who timely submit a proof of claim may participate in the distribution of the recovery proceeds. Plaintiff shall also submit a proposed proof of claim form.